QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Gary E. Gans (Cal. Bar No. 89537)
 *garygans@quinnemanuel.com*
Jeffery D. McFarland (Cal. Bar No. 157628)
 *jeffmcfarland@quinnemanuel.com*
Shahin Rezvani (Cal. Bar No. 199614)
 *shahinrezvani@quinnemanuel.com*
Aaron H. Perahia (Cal. Bar No. 304554)
 *aaronperahia@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Plaintiff
Esplanade Productions, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPLANADE PRODUCTIONS, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WALT DISNEY PICTURES, a California corporation; ABC, INC., a New York corporation; BUENA VISTA HOME ENTERTAINMENT, INC., a California corporation; DISNEY CONSUMER PRODUCTS, INC., a California corporation; DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA, INC., a California corporation; DISNEY BOOK GROUP, LLC, a Delaware limited liability company; BUENA VISTA BOOKS, INC., a California corporation; DISNEY INTERACTIVE STUDIOS, INC., a California corporation; DISNEY STORE USA, LLC, a Delaware limited liability company; DISNEY SHOPPING, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br><br> **(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *ET SEQ.*);** <br> **(2) BREACH OF IMPLIED-IN-FACT CONTRACT;** <br> **(3) BREACH OF CONFIDENCE;** <br> **(4) UNFAIR COMPETITION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Esplanade Productions, Inc. ("Esplanade") alleges:

## **INTRODUCTION**

1.     Copyright law protects the expression of original works of authorship from unauthorized copying.  Although The Walt Disney Company rigorously enforces its copyrights, it has developed a culture that not only accepts the unauthorized copying of others' original material, but encourages it.  Byron Howard, a director and credited writer of the Disney animated motion picture, *Zootopia*, has told artists:

> Don't worry if you feel like you're copying something, because if it comes through you, it's going to filter through you and you're going to bring your own unique perspective to it.

2.     Defendants' unauthorized appropriation of others' intellectual property is a corporate practice that has generated tremendous profits.  They did it with *The Lion King* when they copied Osamu Tezuka's *Kimba The White Lion*.  They did it with *Toy Story* when they copied Jim Henson's *The Christmas Toy*.  They did it with *Monsters, Inc.* when they copied Stanley Mouse's *Wise G'Eye*.  They did it with *Up* when they copied Yannick Banchereau's *Above Then Beyond*.  They did it with the *Frozen* trailer when they copied Kelly Wilson's *The Snowman*.  And, they did it with *Inside Out* when they copied Frédéric Mayer's and Cédric Jeanne's *Cortex Academy*, among other sources.

3.     They did it with *Zootopia*, too, when they copied Gary L. Goldman's *Zootopia*.  Twice – in 2000 and 2009 – Goldman, on behalf of Esplanade, pitched Defendants his *Zootopia* franchise, which included a live-action component called *Looney* and an animated component called *Zootopia*.  He provided a treatment, a synopsis, character descriptions, character illustrations, and other materials.  He even provided a title for the franchise: "Zootopia."  Instead of lawfully acquiring

1

Goldman's work, Defendants said they were not interested in producing it and sent him on his way.  Thereafter, consistent with their culture of unauthorized copying, Defendants copied Goldman's work.  They copied Goldman's themes, settings, plot, characters, and dialogue – some virtually verbatim.  They copied Goldman's title, "Zootopia."  They even copied Goldman's character designs and artwork, as shown in the side-by-side comparison below:

Comparison of the Characters in the Goldman Zootopia (L) and Disney Zootopia (R)



4.     By this action, Esplanade seeks to hold Defendants responsible for their blatant and unauthorized copying of Goldman's work.

**JURISDICTION AND VENUE**

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a) because the Court has original jurisdiction over Esplanade's claim for copyright infringement arising under 17 U.S.C. § 101, *et seq.*, and supplemental jurisdiction over Esplanade's claims arising under California law.

6.      The Court has personal jurisdiction over Defendants because they reside and/or conduct business in the State of California.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events and omissions giving rise to Esplanade's claims occurred in this district.  Venue also is proper in this district pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) because Defendants are subject to personal jurisdiction in this district and reside in this district.

**PARTIES**

8.      Esplanade is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

9.      Esplanade is informed and believes, and on that basis alleges, that Defendant The Walt Disney Company is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Delaware and qualified to do business in the State of California, with its principal place of business in Burbank, California.

10.     Esplanade is informed and believes, and on that basis alleges, that Defendant Disney Enterprises, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Delaware and qualified to do business in the State of California, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on

that basis alleges, that Disney Enterprises, Inc. is a subsidiary of The Walt Disney Company.  Esplanade is further informed and believes, and on that basis alleges, that Disney Enterprises, Inc.'s primary business activity is the licensing of intellectual property rights related to motion pictures and television programs produced by its affiliates and/or subsidiaries.

11.     Esplanade is informed and believes, and on that basis alleges, that Defendant Walt Disney Pictures is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that Walt Disney Pictures is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes, and on that basis alleges, that Walt Disney Pictures' primary business activity is the development and production of motion pictures.

12.     Esplanade is informed and believes, and on that basis alleges, that Defendant ABC, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that ABC, Inc. is a direct or indirect subsidiary of The Walt Disney Company.  Esplanade is further informed and believes, and on that basis alleges, that ABC, Inc. operates a division known as Walt Disney Studios Motion Pictures, which distributes motion pictures produced by affiliated entities.

13.     Esplanade is informed and believes, and on that basis alleges, that Defendant Buena Vista Home Entertainment, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that Buena Vista Home Entertainment, Inc. is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes, and on that basis alleges, that Buena Vista Home

1   Entertainment, Inc.'s primary business activity consists of distributing Blu-ray Discs
2   and DVDs of motion pictures produced by affiliated entities.

3        14.    Esplanade is informed and believes, and on that basis alleges, that
4   Defendant Disney Consumer Products, Inc. is, and at all times mentioned herein
5   was, a corporation duly organized and existing under the laws of the State of
6   California, with its principal place of business in Burbank, California.  Esplanade is
7   further informed and believes, and on that basis alleges, that Disney Consumer
8   Products, Inc. is a subsidiary of Disney Enterprises, Inc.  Esplanade is further
9   informed and believes, and on that basis alleges, that Disney Consumer Products,
10  Inc.'s primary business activity is the licensing of intellectual property rights for
11  exploitation by third parties.

12       15.    Esplanade is informed and believes, and on that basis alleges, that
13  Defendant Disney Consumer Products and Interactive Media, Inc. is, and at all times
14  mentioned herein was, a corporation duly organized and existing under the laws of
15  the State of California, with its principal place of business in Burbank, California.
16  Esplanade is further informed and believes, and on that basis alleges, that Disney
17  Consumer Products and Interactive Media, Inc. is a subsidiary of Disney
18  Enterprises, Inc.  Esplanade is further informed and believes, and on that basis
19  alleges, that Disney Consumer Products and Interactive Media, Inc.'s primary
20  business activity is the licensing of intellectual property rights for exploitation by
21  third parties.

22       16.    Esplanade is informed and believes, and on that basis alleges, that
23  Defendant Disney Book Group, LLC is, and at all times mentioned herein was, a
24  limited liability company duly organized and existing under the laws of the State of
25  Delaware, with its principal place of business in Burbank, California.  Esplanade is
26  further informed and believes, and on that basis alleges, that Disney Book Group,
27  LLC is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and
28  believes, and on that basis alleges, that Disney Book Group, LLC's primary

COMPLAINT

business activity is the distribution, marketing, and selling of publications related to motion pictures produced by its affiliated entities.

17.     Esplanade is informed and believes, and on that basis alleges, that Defendant Buena Vista Books, Inc. is, and at all times mentioned herein was, a limited liability company duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that Buena Vista Books, Inc. is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes, and on that basis alleges, that Buena Vista Books, Inc.'s primary business activity is the distribution, marketing, and selling of publications related to motion pictures produced by its affiliated entities.

18.     Esplanade is informed and believes, and on that basis alleges, that Defendant Disney Interactive Studios, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that Disney Interactive Studios, Inc. is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes, and on that basis alleges, that Disney Interactive Studios, Inc.'s primary business activity is the publication and distribution of video games related to motion pictures produced by its affiliated entities.

19.     Esplanade is informed and believes, and on that basis alleges, that Defendant Disney Store USA, LLC is, and at all times mentioned herein was, a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in Burbank, California.  Esplanade is further informed and believes, and on that basis alleges, that Disney Store USA, LLC is a subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes, and on that basis alleges, that Disney Store USA, LLC's primary business

COMPLAINT

1   activity is the operation of retail stores that sell merchandise related to motion

2   pictures produced by its affiliated entities.

3         20.    Esplanade is informed and believes, and on that basis alleges, that

4   Defendant Disney Shopping, Inc. is, and at all times mentioned herein was, a

5   corporation duly organized and existing under the laws of the State of Delaware,

6   with its principal place of business in Burbank, California.  Esplanade is further

7   informed and believes, and on that basis alleges, that Disney Shopping, Inc. is a

8   subsidiary of Disney Enterprises, Inc.  Esplanade is further informed and believes,

9   and on that basis alleges, that Disney Shopping, Inc.'s primary business activity is

10  the operation of an Internet-based store (http://disneystore.com) that sells

11  merchandise related to motion pictures produced by its affiliated entities.

12        21.    The true names and capacities of Defendants Does 1 through 10,

13  inclusive, are presently unknown to Esplanade, who therefore sues said Defendants

14  by such fictitious names.  Esplanade is informed and believes, and on that basis

15  alleges, that each of the fictitiously named defendants is responsible in some manner

16  for the matters alleged herein.  Esplanade will amend this Complaint to state the true

17  names and capacities of Does 1 through 10 when they are ascertained.

18        22.    Esplanade is informed and believes, and on that basis alleges, that at all

19  times mentioned herein, each Defendant acted as the actual or ostensible agent,

20  employee, and/or co-conspirator of each other Defendant and, in performing the

21  actions alleged herein, acted in the course and scope of such agency, employment,

22  and/or conspiracy.  Esplanade is further informed and believes, and on that basis

23  alleges, that each Defendant succeeded to, assumed the liabilities of, and/or ratified

24  the actions of each other Defendant with respect to the matters alleged herein.

25

26

27

28

COMPLAINT

# FACTUAL BACKGROUND

**I.     Goldman Has Over 30 Years of Experience Directing, Writing, and Producing Commercially and Critically Acclaimed Motion Pictures.**

23.     Goldman is a successful motion picture writer, director, and producer. In 1984, Goldman incorporated Esplanade to produce motion pictures and provide his services as a writer, director, and producer.  Goldman has since been Esplanade's Chief Executive Officer, director, employee, and sole shareholder.

24.     After graduating from Brandeis University in 1975, Goldman studied filmmaking at the University of California, Los Angeles.  Goldman then directed two critically acclaimed documentary films:  *Degas In New Orleans*, which was invited to the Cannes Film Festival, and *Yes, Ma'am*, which won first prize at the American Film Festival.

25.     Goldman later wrote screenplays for major motion pictures, including *Big Trouble in Little China*, *Total Recall*, *Navy Seals*, and *Next*.  Goldman also worked as a script doctor for other major motion pictures, including *Basic Instinct*, *Waterworld*, and *Judge Dredd*.  In addition, Goldman has produced major motion pictures such as *Minority Report* and *Next*.

26.     Goldman has long worked on commercially and critically successful motion pictures.  The motion pictures mentioned above have grossed over one billion dollars, with some breaking box office records upon release.  Many also have received widespread critical praise; for example, *Total Recall* and *Minority Report* are often listed among the best science fiction motion pictures of all time.

27.     Goldman also has conceived and worked on motion pictures that became franchises and generated revenues from ancillary markets and merchandising.  For example, *Big Trouble in Little China* generated revenues from merchandise such as clothing, action figures, comic books, and video games; *Total Recall* was remade into a 2012 motion picture, spawned a television series, and was

1   made into a video game; and *Minority Report* was made into a television series and

2   a video game.

3        28.    Goldman has worked with Hollywood's A-List as well.  On the motion

4   pictures mentioned above, Goldman is credited alongside directors such as Steven

5   Spielberg and Paul Verhoeven, as well as some of Hollywood's biggest actors,

6   including Kate Beckinsale, Jessica Biel, Nicholas Cage, Bryan Cranston, Tom

7   Cruise, Colin Farrell, Julianne Moore, Kurt Russell, Arnold Schwarzenegger,

8   Sharon Stone, and Charlie Sheen.

9        29.    Goldman also has long worked with the industry's top studios.  He

10   even has worked with Defendants.  In 2007, Walt Disney Pictures hired Goldman to

11   write a screenplay for a project known as *Blaze*, created by Marvel comic-book

12   writer Stan Lee.  Walt Disney Pictures executive Brigham Taylor oversaw the

13   project.  Goldman worked closely with Taylor and Lee.  Both liked Goldman's

14   work: Taylor commissioned additional work, and Lee wrote Goldman, "You're now

15   my favorite writer!"

16   **II.**    **Goldman Spent Substantial Resources to Create and Develop *Zootopia*.**

17        30.    In 2000, Goldman, as an employee of Esplanade, researched,

18   conceptualized, created, developed, and wrote an original artistic work entitled

19   *Zootopia* (the "Goldman Zootopia").  Between 2000 and 2009, Goldman further

20   researched, conceptualized, developed, and wrote the Goldman Zootopia.  The

21   Goldman Zootopia is a franchise for motion pictures, television programs, and

22   derivative products based on an animated cartoon world that metaphorically

23   explores life in America through the fictional setting of a diverse, modern, and

24   civilized society of anthropomorphic animals.

25        31.    Goldman invested substantial time, money, and other resources to

26   create and develop the Goldman Zootopia.  Among other things, Goldman created

27   and wrote detailed descriptions of the franchise's main characters, including the

28

characters' physical appearances, personal histories, and character traits (the "Character Descriptions").

32.     Esplanade also engaged an established and experienced animator, character designer, and cartoonist on a work-made-for-hire basis to create the following visual images of the main characters in the Goldman Zootopia (the "Character Illustrations"):



33.     In addition, Goldman wrote a synopsis (the "Synopsis") and a treatment (the "Treatment") for the first segment of the Goldman Zootopia franchise, entitled *Looney*.  On August 17, 2000, the Treatment was registered with the Writers Guild of America, West, Inc.

34.     On February 10, 2017, Esplanade registered the Character Descriptions, Character Illustrations, Synopsis, and Treatment as part of a collection entitled "Zootopia" with the United States Copyright Office.

**III.    Goldman Pitched the Goldman Zootopia to Defendants in Confidence and for Compensation.**

35.     In the motion picture industry, writers commonly submit ideas and written materials to studios and producers with the understanding that, if any idea or material is used, the studio or producer must compensate the writer for the use of the idea or material.  Furthermore, writers, studios, and producers generally understand that such ideas and materials are disclosed in confidence and may not be disclosed to others or used beyond the limits of the confidence without the writer's consent.  Esplanade and Defendants had such understandings at all material times mentioned in this complaint.

### A.   **2000 Pitch**

36.    In 2000, Goldman met with Mandeville Films' Chief Executive Officer, David Hoberman, at Defendants' offices in Burbank, California, to pitch the Goldman Zootopia. Esplanade is informed and believes, and on that basis alleges, that Hoberman was Walt Disney Studios' former President of Motion Pictures and that Mandeville Films had a first-look production contract with Defendants.

37.    At the time of the meeting, Goldman, Hoberman, and Defendants each had the understandings alleged in Paragraph 35 above. In particular, Goldman, Hoberman, and Defendants understood that writers pitch ideas and materials to studios and producers in confidence in order to sell those ideas and materials for financial compensation, that the meeting was for the purpose of Esplanade offering for sale to Mandeville Films and Defendants the ideas and materials for the Goldman Zootopia, and that neither Mandeville Films nor Defendants would use or disclose any of these ideas or materials without compensating Esplanade. Furthermore, they understood that Goldman was disclosing the ideas and materials for the Goldman Zootopia to Mandeville Films and Defendants in confidence, with the understanding that Mandeville Films and Defendants would maintain that confidence and compensate Esplanade if any of them used or disclosed the ideas or materials. Accordingly, Esplanade had a reasonable expectation that neither Mandeville Films nor Defendants would use or disclose the ideas or materials without its consent or without payment.

38.    During the meeting at Defendants' offices, Goldman orally presented the ideas and materials for the Goldman Zootopia franchise, including themes, plot, settings, and characters, and showed Hoberman copies of the Character Illustrations and other materials. Hoberman listened to the presentation, viewed some of those materials, and voluntarily accepted copies of those materials. Hoberman responded favorably to the Goldman Zootopia franchise during the meeting. Based on the parties' understandings as alleged above, Goldman gave Hoberman copies of the

11

Character Illustrations in confidence so that Hoberman could further review the materials and provide them to Defendants for their review. Esplanade is informed and believes, and on that basis alleges, that Hoberman did provide copies of the materials to Defendants.

39. Hoberman subsequently informed Goldman that Mandeville Films and Defendants decided they would not seek to acquire rights in Esplanade's ideas or materials.

**B.** **2009 Pitch**

40. By 2009, Goldman had further developed the Goldman Zootopia and decided to try to sell it again. At the time, Goldman was working on *Blaze* with Brigham Taylor who, Esplanade is informed and believes, was Walt Disney Pictures' Executive Vice President of Production and Development at the time. Because Goldman had this existing relationship with Taylor, Goldman offered to pitch the Goldman Zootopia to Taylor on behalf of Defendants, and Taylor accepted Goldman's offer. On or about February 12, 2009, Goldman met with Taylor at Defendants' offices in Burbank, California.

41. At the time of the meeting, Goldman, Taylor, and Defendants each had the understandings alleged in Paragraph 35 above. In particular, Goldman, Taylor, and Defendants understood that writers and producers pitch ideas and materials to studios in confidence in order to sell those ideas and materials for financial compensation, that the meeting was for the purpose of Esplanade offering for sale to Defendants the ideas and materials for the Goldman Zootopia, and that Defendants would not use or disclose any of the ideas or materials without compensating Esplanade. Furthermore, Taylor knew that Goldman was disclosing his ideas and materials for the Goldman Zootopia to Taylor and Defendants in confidence, with the understanding that Taylor and Defendants would maintain that confidence, and with the understanding that Defendants would compensate Esplanade if any of them used any of the ideas or materials. Accordingly, Esplanade had a reasonable

expectation that Defendants would not use or disclose its ideas or materials without its consent or without payment.

42.     During the meeting at Defendants' offices, Goldman orally presented the ideas and materials for the Goldman Zootopia franchise, including themes, plot, settings, and characters, and showed Taylor copies of the Character Descriptions, Character Illustrations, Treatment, Synopsis, and other materials.  Taylor listened to the presentation and read some of those materials.  At the end of the meeting, Taylor told Goldman that he would show Esplanade's materials to Defendants' animation departments to determine whether Defendants were interested in acquiring rights in the Goldman Zootopia.  Based on the parties' understandings as alleged above, Goldman gave Taylor copies of the Character Descriptions, Character Illustrations, Treatment, Synopsis, and other materials in confidence so that Defendants' animation departments could review the materials.  Taylor, on behalf of Defendants, voluntarily accepted copies of those materials.  Esplanade is informed and believes, and on that basis alleges, that Taylor did provide copies of those materials to Defendants' animation departments.

43.     Taylor subsequently informed Goldman that Defendants decided they would not seek to acquire rights in Esplanade's ideas or materials.

## IV.   Defendants Produced, Reproduced, Distributed, Performed, Displayed, and Prepared Derivative Works Based on the Goldman Zootopia.

44.     At some time thereafter, Defendants began to develop and produce an animated motion picture entitled *Zootopia* (the "Disney Zootopia").  Esplanade is informed and believes, and on that basis alleges, that the production budget for the Disney Zootopia was approximately $150 million, and that the motion picture was fully produced and completed in 2015 or early 2016.

45.     Esplanade is informed and believes, and on that basis alleges, that on or about February 11, 2016, Defendants commenced distributing and facilitating the display of the Disney Zootopia to the public internationally.  Esplanade is informed

and believes, and on that basis alleges, that on or about March 4, 2016, Defendants commenced distributing and facilitating the display of the Disney Zootopia to the public in the United States.  Esplanade is informed and believes, and on that basis alleges, that Defendants have distributed and facilitated the display of the Disney Zootopia to the public in over 70 countries to date.

46.     Esplanade is informed and believes, and on that basis alleges, that the Disney Zootopia grossed more than one billion dollars at the theatrical box office. Esplanade is further informed and believes, and on that basis alleges, that the Disney Zootopia is the highest-grossing original animated film of all time.  On December 11, 2016, the Disney Zootopia won a Critics' Choice Award for Best Animated Feature Film.  On January 8, 2017, the Disney Zootopia won a Golden Globe for Best Animated Feature Film.  On February 4, 2017, the Disney Zootopia won an Annie Award for Best Animated Feature Film.  And, on February 26, 2017, the Disney Zootopia won an Academy Award for Best Animated Feature Film.

47.     Esplanade is informed and believes, and on that basis alleges, that on or about June 7, 2016, Defendants commenced distributing and facilitating the display of the Disney Zootopia to the public by offering it for sale and rental in various non-theatrical forms including, but not limited to, Blu-ray Discs, DVDs, pay-per-view, on-demand, and other Internet-based platforms.

48.     Esplanade is informed and believes, and on that basis alleges, that in 2016, Defendants commenced displaying the Disney Zootopia characters to the public at theme parks.

49.     Esplanade is informed and believes, and on that basis alleges, that in or about 2016, Defendants created, manufactured, published, and commenced distributing merchandise based on the Disney Zootopia, including but not limited to, toys, games, books, comics, video games, dolls, figurines, clothing, kitchenware, and other merchandise (collectively, the "Zootopia Merchandise").

50.     Esplanade is informed and believes, and on that basis alleges, that Defendants purport to own copyrights to the Disney Zootopia and the Zootopia Merchandise, and license the use of Disney Zootopia materials to third parties.

51.     Esplanade is informed and believes, and on that basis alleges, that Defendants also used materials from the Disney Zootopia to market the Disney Zootopia, the Zootopia Merchandise, and licensing for the use of the Disney Zootopia materials.

52.     Esplanade gave Defendants actual notice of Esplanade's copyright and demanded that Defendants cease and desist from infringing Esplanade's copyright, but Defendants have willfully refused to do so.

**V.     The Disney Zootopia is Substantially Similar to the Goldman Zootopia.**

53.     The Disney Zootopia is substantially similar to the Goldman Zootopia. The Goldman Zootopia involves a human animator who creates a cartoon world of animated anthropomorphic animal characters called "Zootopia."  The Disney Zootopia copies substantial elements of that cartoon world, calls it "Zootopia," and uses substantially similar settings, characters, dialogue, mood, pace, artwork, and, although differing superficially, plot points and story structures, to express substantially similar themes.  Defendants used the expression of substantial elements of the Goldman Zootopia, including the arrangement, selection, and combination of elements, to achieve a substantially similar concept and feel.

**A.     Themes**

54.     The themes of the Disney Zootopia and the Goldman Zootopia are substantially similar.  Each of the works addresses the issue of whether, in a diverse society as represented by the different species of "Zootopia," one can be anything he or she wants to be.  A corollary theme is whether, in order to do so, one can overcome not only the prejudices inherent in a diverse society as represented by Zootopia, but also the prejudices within oneself as a member of such a society. Another corollary theme is whether one should try to change and define oneself

despite his or her nature as manifested in the zoology of "Zootopia."  Both works explore whether the societies can live up to utopian ideals and judge and credit others fairly as individuals not as stereotypes, based on conceptions of merit not natural order, and the protagonists are challenged to strike a balance between the utopian and counter-utopian positions, optimism and pessimism, nature and individuality, and self-acceptance and self-improvement.

**B.   Settings**

55.    The settings of the Disney Zootopia and the Goldman Zootopia also are substantially similar.  Both are set in a motion picture cartoon world made up of animated animal characters.  Specifically, the settings of both works include: (i) a modern civilized world of two-legged anthropomorphic animals; (ii) a society constituted by different species from different natural worlds, *i.e.*, a "melting pot" where various species mix and interact; (iii) a place referred to as "Zootopia" where the different species live together, with each species having its own neighborhood; (iv) a present day technological business world in which the characters go to work in the morning and come home at night; and (v) a society with an established class and power structure based largely on the animals' characteristics such as the nature of their species.  Esplanade is informed and believes, and on that basis alleges, that these similarities in settings are unique to the works in issue.

56.    The works also have similar particular settings.  For example, both works: (i) feature human-like physical environments with modern civilized features rather than natural environments such as the wild, a forest, or a jungle; (ii) have the protagonists move back and forth between small towns where they grew up and the big city; (iii) have heroes starting and returning to their parents' homes and workplaces in those small towns; (iv) have scenes at clubs with similar names, *i.e.*, the "Mystic Spring Oasis" and the "Watering Hole"; (v) have schools where animals are taught biology and ecology; (vi) have institutional workplaces where the heroes work; (vii) have characters bullied as youths in private male-only rooms; (viii) have

heroes excel and be recognized for their excellence at a college or academy; (ix) have heroes publicly express prejudice and damage relationships with their partners in media venues; and (x) have asylums where the protagonists address issues of madness and out-of-control Zootopian characters.  Again, Esplanade is informed and believes, and on that basis alleges, that these similarities are unique to the works in issue.

57.    The similarities in settings are substantial and are used to express the works' similar themes, characters, and dramatic conflicts.

**C.    <u>Dialogue</u>**

58.    The dialogue of the Disney Zootopia and the Goldman Zootopia is substantially similar. The Disney Zootopia and the Goldman Zootopia share key words and lines, including the most important words in the works.

59.    The works use the word "Zootopia" not just as a title (*see* below) but also as part of the dialogue.  Esplanade first used the word in 2000, and Esplanade is informed and believes, and on that basis alleges, that Defendants never previously used the word.  "Zootopia" is a portmanteau of "zoo" and "utopia."  It is more than just a word in the context of the works in issue; it relates to settings (diverse species of animals from different habitats living together in one place), themes (whether someone in a diverse society can be whatever he or she wants to be), and the dynamics of the characters as well as their development and relationships (the conflict between utopian optimism and cynical pessimism).  "Zootopia" is used a multitude of times throughout the Disney Zootopia.

60.    The Goldman Zootopia and the Disney Zootopia also have virtually identical lines from the main characters expressing the utopian theme:

- *Goldman Zootopia*: "If you want to be an elephant, you can be an elephant."
- *Disney Zootopia*: "You want to be an elephant when you grow up, you be an elephant."

17

61.     The two works also include lines with similar substance, but without using the identical words, to express the counter-utopian theme:

- *Goldman Zootopia (in character description)*: "He has no hope that he can change or improve; or that anyone else can change or improve."

- *Disney Zootopia (in lines from that character)*: "Everyone comes to Zootopia thinking they can be anything they want. Well, you can't. You can only be what you are."

62.     The similarities in this and other dialogue are substantial and express both works' themes, characters, and dramatic conflicts.

**D.    <u>Characters</u>**

63.     The Disney Zootopia has characters who are substantially similar to Goldman Zootopia characters in two respects: (1) the ensemble of characters as a whole; and (2) individual characters, including the protagonists (*i.e.*, the two main characters), the antagonist, and various side characters.

**1.    The Ensemble**

64.     The ensemble of characters in the two works is substantially similar. The ensemble represents a diverse ethnic and cultural society (*i.e.*, a "melting pot" representative of America) with a multi-tiered class and power structure constituted by animals of different species from different places with different natures, sizes, strengths, psychologies, and philosophies.  The ensemble includes animals who are big and small, from different continents and habitats, predators and prey, utopians and anti-utopians, optimists and pessimists, powerful and weak, and leaders and followers, as well as animals for comic relief and sex symbols.  The matrix of animals with these characteristics, attitudes, personalities, *etc.*, forms a model of society and contributes to the expression of the works' themes, characters, and dramatic conflicts.

65. The ensembles also are visually similar:

Goldman Zootopia



Disney Zootopia



### 2. The Individual Characters

66. **Judy.** Judy is the heroine and most important character of the Disney Zootopia, and she is one of the two protagonists. Judy is a rabbit who is visually similar to the Goldman Zootopia character of Mimi, a squirrel, both of whom are small, furry, "cute" prey animals with big eyes and oversized appendages.

Goldman Zootopia                    Disney Zootopia

  

19

Judy's characteristics are substantially similar to those of Mimi and another Goldman Zootopia character, Hugo, in the following respects, *inter alia*: Judy is an outsider in Zootopia.  Despite her competence, she is underestimated, unappreciated, and not taken seriously because of her species, and is thus a victim of prejudice. Judy is an underdog, but she is brave, energetic, determined, and enthusiastic, and she helps others by, among other things, rescuing them when they are in jeopardy. Her small size allows her to get in and out of places unlike others.  Judy is good natured, kindhearted, and constantly trying to improve herself and others.  Above all, she is naively idealistic and optimistic, representing the utopian view of Zootopia.  She embodies and expresses the key thematic line of both works, *i.e.*, "you want to be an elephant when you grow up, you be an elephant."

67.   **Nick.**  Nick is the second most important character of the Disney Zootopia and is the other protagonist.  Nick is Judy's foil.  He is a fox who is visually similar to the Goldman Zootopia character of Roscoe, a hyena.  Both are dog-like predators who appear sly, cynical, and untrustworthy because of their postures, half-lidded eyes, and smirks.

Goldman Zootopia                    Disney Zootopia




Nick's characteristics are substantially similar to those of Roscoe and another Goldman Zootopia character, Monty, in the following respects, *inter alia*:  Nick lives in Zootopia, but he is an outcast because of his reviled species.  Thus, he is a victim of prejudice and is an underdog.  But Nick has no hope that he can change or progress, or that anyone can change given his or her nature and the prejudice of

society.  He is a pessimist who embodies and expresses the cynical view of the world that opposes Judy's utopian view.  Nick gives the counter-utopian lines which establish a central conflict in the works, *e.g.*, "Everyone comes to Zootopia thinking they can be anything they want. Well, you can't. You can only be what you are." Nick is a prankster who schemes rather than works.  He has a bad attitude, and is determined not to seek the approval of those who disdain him.  He is uncouth and brutally honest, and even takes pride in his obnoxious behavior; still, he is likeable due to his humor and charm.  Nick is also physically agile.  He is ultimately a good friend who presents the question of whether an outcast like him can be loved.

68.  **Ms. Bellwether.**  Ms. Bellwether is the antagonist in the Disney Zootopia.  She is a sheep who is visually similar to the Goldman Zootopia character of Ms. Quilty, an ostrich.  Both are passive, meek, and vulnerable prey animals with, among other things, big eyes and hair piled high on their heads.

Goldman Zootopia          Disney Zootopia

 

Ms. Bellwether's characteristics are substantially similar to those of Ms. Quilty and another Goldman Zootopia character, Fuzz, in the following respects, *inter alia*: Ms. Bellwether is ostensibly unattractive and seemingly prissy, but at the same time vain.  She is unappreciated by the dominant male figure in her life and unhappy in that relationship.  Most importantly, Ms. Bellwether is a little Napoleon who is consumed with unbridled ambition.  She is a prey animal who wants to challenge and overthrow the top predator leader of Zootopia and assume his place in the power structure.  She has no qualms about manipulating other animals to serve her

ambition, but she goes too far and ultimately fails.  Ms. Bellwether specifically uses biology in her role.

69.     **Side characters.**  Side characters in the Disney Zootopia also are substantially similar to side characters in the Goldman Zootopia, including:

(a)     ***Bogo.***  Bogo, the chief of police in the Disney Zootopia, is similar visually and characteristically to Griz, the leader of the Goldman Zootopia.  Both are big, strong, intimidating, and "grizzled," and both see themselves as natural leaders who do not need to answer to their underlings.

Goldman Zootopia                     Disney Zootopia




(b)     ***Yax.***  Yax in the Disney Zootopia is similar visually and characteristically to Max in the Goldman Zootopia.  Both are tall, horned, Asian mountain animals with similar names.  Yax is the proprietor of a club called "The Mystic Spring Oasis," and Max is the proprietor of a club with a similar name, "The Watering Hole."

Goldman Zootopia                     Disney Zootopia




22

(c)    ***Gazelle.***  Gazelle in the Disney Zootopia is similar visually and characteristically to Cha in the Goldman Zootopia.  Both are Latin female characters, in the bodies of African animals, who are ostensibly attractive and function as performers and sex symbols.  Males fall for them even though they are unattainable.

Goldman Zootopia

Disney Zootopia




### E.    Plot and Sequence of Events

70.    The plot structure and key events of the Disney Zootopia also are substantially similar to the Goldman Zootopia.  The Disney Zootopia story focuses on a small animal character who becomes a police officer, thereby illustrating that one can be what he or she wants to be.  In doing so, the Disney Zootopia copies key elements of the Goldman Zootopia's stories about the animator and his Zootopian characters, which illustrate the same thing.  Both Zootopias play out similar conflicts among the characters, including conflicts about whether one can be what he or she wants to be and whether individuals can change by overcoming prejudice not only in society but also within themselves.

71.    Both Zootopias involve a small, cute, furry female animal, who is an outsider to "Zootopia."  She is dismissed by the other more dominant animals because of her species, and she strives to overcome that societal prejudice.  She is brave, determined, resourceful, and helpful to others in trouble, particularly by using her small size.  She becomes friends with an abrasive predator who lives in

23

Zootopia.  The predator also is subject to prejudice as he is reviled for his species. He is determined not to seek the approval of those who disdain him and derives pleasure from pulling pranks.  The two contrasting protagonists team up and contend with prejudice and preconceived notions of the elite, including a power structure headed by those whose species were dominant in a state of nature.  She is an enthusiastic optimist while he is a cynical pessimist, and the stories play out that conflict, *e.g.*, whether one can evolve, define oneself, and become what he or she wants to be.  Each plot develops in the context of a scheme by a third character, a small prey animal, to upend the power structure, but the scheme goes too far and fails.

72.     The plot and sequence of events in the Disney Zootopia also copies a multitude of concrete elements from the animator's story in the Goldman Zootopia. Both works begin with young, uncool heroes who live in small towns with their parents.  Each is bullied by a bigger, stronger, mean kid.  The heroes work to achieve a career dream that their parents specifically discourage.  They go to academies where they excel, achieve recognition for their work, and earn the opportunity to go to the big city for their dream jobs.

73.     In the big city, the heroes come up against strong, powerful, and entrenched bosses who want to maintain control over the heroes.  The heroes are obsessed with their work and go to extreme lengths in pursuit of success, even taking principled stances in defiance of their bosses.  The heroes have partners who help them achieve success.  But success goes to the heroes' heads and they publicly offend others and alienate their partners, exhibiting their own prejudices.  This triggers a job crisis, resulting in the heroes losing their dream jobs and hard-won statuses.  And the crisis results in their having to leave unfinished an important but problematic project.

74.     Discouraged and rejected, the heroes move back to their parents' houses in the small towns to live and work with their parents in lives they sought to

escape.  The heroes encounter their former bullies, who have overcome their own prejudices and evolved into good people.  The heroes learn from their former bullies to overcome their own internal prejudices and appreciate their former partners.  They apologize to their partners and plead to work with them again to complete the unfinished project.

75.     To achieve success, the heroes must solve a problem with the madness of out-of-control Zootopia characters in an asylum.  The heroes eventually overcome their own prejudices,  reconcile with their partners, and finish their unfinished projects.  In doing so, they regain their lost statuses and illustrate that one can evolve and become what he or she wants to be.

76.     This plot structure and these events involve and are driven by similar settings and characters, and they are used in similar ways to express similar themes.

**F.     Mood and Pace**

77.     The moods of the two works also are substantially similar.  The works are written for adults and children, with comic, social, and emotional aspects.  The moods involve humor with an undercurrent of pathos and light moments juxtaposed with dark moments.  Both feature disappointment, disillusionment, and sadness, but also comedy and ultimate success.  The moods alternate as the main characters' personalities and worldviews battle, taking turns suffering setbacks and later achieving vindication.  Both moods culminate in a mood of reconciliation and hope for gradual further improvement in the future.  The pace changes with the mood, sometimes exhibiting frenetic energy while other times slowing down for the exposition of the disappointment and disillusionment.

**G.     Artwork**

78.     The Disney Zootopia and the Goldman Zootopia also have substantially similar artwork.  The character artwork in Disney's work has the same concept and feel as that in Goldman's work on ensemble and individual character levels.

79.     This artwork in the two Zootopias has the same subject matter and substantially similar appearance, including shapes, colors, body structures, poses, and facial expressions of the animal characters.  Moreover, the characters illustrated are not true-life depictions of real animals, nor are they generic or inherent in nature; rather, they are original creative expressions of animals of different species from different habitats in different parts of the world and constitute a selection and arrangement of expression.  The artwork is not only substantially similar on its own, but also is part of a similar combination of elements, which expresses theme, setting, and character.

**H.     Title**

80.     Titles, although not independently copyrightable, may be part of a combination of elements that constitutes substantial similarity of two works.  The title "Zootopia" in Defendants' work is identical to "Zootopia" in Goldman's work.  Moreover, as alleged above, "Zootopia" is more than just a name: it expresses theme, setting, and character, and it relates to plot.  Esplanade is informed and believes, and on that basis alleges, that Defendants have never used the title before in their multitude of works.

**I.     Selection, Arrangement, and Combination of Elements**

81.     The elements of the Goldman Zootopia that are similar to elements of the Disney Zootopia are original and qualitatively important to the Goldman Zootopia.  Furthermore, the selection, arrangement, and combination of elements in the Goldman Zootopia are original and qualitatively important to the Goldman Zootopia.  The Disney Zootopia copies both individual elements, and the selection, arrangement, and combination of elements, from the Goldman Zootopia.

82.     For the foregoing reasons, the works are substantially similar in expression and have a substantially similar concept and feel.

**J.      Zootopia Merchandise**

83.      The Zootopia Merchandise also is substantially similar to the Goldman Zootopia in expression, concept, and feel.  In particular, as alleged above, the works have substantially similar themes, settings, dialogue, characters, plot, story structure, mood, and artwork; the same title; and substantially similar selections, arrangements, and combinations of elements.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement –17 U.S.C. §§ 106, *et seq*.

### (Direct, Contributory, and Vicarious)

### (Against All Defendants)

84.      Esplanade repeats and realleges each and every allegation contained in Paragraphs 1 through 83, above, as though fully set forth herein.

85.      Esplanade is the owner of the copyright in an original work that is fixed in tangible media of expression.  On February 10, 2017, Esplanade registered the Character Descriptions, Character Illustrations, Synopsis, and Treatment as part of a collection entitled "Zootopia" with the United States Copyright Office.

86.      Esplanade is informed and believes, and on that basis alleges, that Defendants have produced, reproduced, prepared derivative works based upon, distributed, publicly performed, and/or publicly displayed Esplanade's protected work and/or derivatives of Esplanade's protected work without Esplanade's consent. Defendants' acts violate Esplanade's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including, but not limited to, Esplanade's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly perform and display its work.

87.      Defendants' infringement and substantial contributions to the infringement of Esplanade's copyrighted work have been done knowingly without Esplanade's consent for commercial purposes and for Defendants' financial gain.

1  Furthermore, Defendants failed to exercise their right and ability to supervise

2  persons within their control to prevent such persons from infringing Esplanade's

3  copyrighted work and did so with the intent to further their financial interest in the

4  infringement of Esplanade's work.  Accordingly, Defendants have directly,

5  contributorily, and vicariously infringed Esplanade's copyrighted work.

6  88.  By virtue of Defendants' infringing acts, Esplanade is entitled to

7  recover Esplanade's actual damages and Defendants' profits in an amount to be

8  proved at trial, Esplanade's attorneys' fees and costs of suit, and all other relief

9  allowed under the Copyright Act.

10  89.  Defendants' infringement has caused, and continues to cause,

11  irreparable harm to Esplanade, for which Esplanade has no adequate remedy at law.

12  Unless this Court restrains Defendants from infringing Esplanade's protected works,

13  this harm will continue to occur in the future.  Accordingly, Esplanade is entitled to

14  preliminary and permanent injunctive relief restraining Defendants from further

15  infringement.

16

17  ### SECOND CLAIM FOR RELIEF

18  **Breach of Implied-In-Fact Contract**

19  **(Against All Defendants)**

20  90.  Esplanade repeats and realleges each and every allegation contained in

21  Paragraphs 1 through 83, above, as though fully set forth herein.

22  91.  Esplanade and Defendants entered into an implied-in-fact contract,

23  based on their conduct as alleged above, whereby Esplanade disclosed ideas and

24  materials for the Goldman Zootopia to Defendants for sale, *i.e.*, in consideration for

25  Defendants' obligation to pay and credit Esplanade if Defendants or any of their

26  affiliated entities used any of those ideas or materials in any motion picture,

27  television program, merchandise, or otherwise; Esplanade reasonably expected to be

28  compensated for such use of any of its ideas or materials; and Defendants

voluntarily accepted Esplanade's offer and disclosures, knowing the conditions on which they were made, *i.e.*, that any use of any of Esplanade's ideas or materials in any motion picture, television program, merchandise, or otherwise, whether by Defendants or any of their affiliates, carried with it an obligation to, *inter alia*, compensate and credit Esplanade for such use.

92.     Esplanade conveyed and Defendants accepted Esplanade's ideas and materials for the Goldman Zootopia with an understanding of the custom and practice in the entertainment industry of providing ideas and materials to producers and studios in exchange for compensation and credit if such ideas or materials are used.

93.     Defendants' conduct implied, and led Esplanade reasonably to believe, that Defendants would compensate and credit Esplanade for its ideas and materials for the Goldman Zootopia if Defendants or any of its affiliates used any of Esplanade's ideas or materials in any motion picture, television program, merchandise, or otherwise.

94.     Esplanade has performed all conditions, covenants, and promises required to be performed on its part in accordance with its implied-in-fact contract with Defendants.

95.     Defendants used Esplanade's ideas and materials in the Disney Zootopia, the Zootopia Merchandise, and otherwise, and such ideas and materials provided substantial value to Defendants.  However, Defendants have not compensated or credited Esplanade for the use of such ideas and materials. Accordingly, Defendants have breached, and continue to breach, their implied-in-fact contract with Esplanade.

96.     As an actual and proximate result of Defendants' material breaches of the implied-in-fact contract, Esplanade has suffered, and will continue to suffer, damages in an amount to be proved at trial.

COMPLAINT

97.     Defendants' conduct has caused, and continues to cause, Esplanade irreparable harm, for which Esplanade has no adequate remedy at law.  Unless this Court restrains Defendants from engaging in such conduct, this harm will continue to occur in the future.  Accordingly, Esplanade is entitled to preliminary and permanent injunctive relief restraining Defendants from further breaches of the implied-in-fact contract.

## THIRD CLAIM FOR RELIEF

### Breach of Confidence

### (Against All Defendants)

98.     Esplanade repeats and realleges each and every allegation contained in Paragraphs 1 through 83, above, as though fully set forth herein.

99.     Esplanade and Defendants entered into a confidential relationship, based on their conduct whereby Esplanade conditioned the disclosure of confidential and novel ideas and materials for the Goldman Zootopia to Defendants in consideration for Defendants' obligation not to use, disclose, or divulge those ideas or materials without Esplanade's permission and without payment and credit to Esplanade for any use of any of those ideas or materials.

100.    Defendants voluntarily accepted Esplanade's confidential disclosures, knowing that the ideas and materials were novel and were being disclosed in confidence, and that the use of any of Esplanade's novel ideas or materials in any motion picture, television program, merchandise, or otherwise, whether by Defendants or any of their affiliates, carried with it an obligation to, *inter alia*, compensate and credit Esplanade for such use.

101.    Esplanade conveyed and Defendants accepted Esplanade's confidential and novel ideas and materials pursuant to custom and practice in the entertainment industry of disclosing creative ideas and materials to producers and studios in consideration for maintaining their confidentiality and not using, disclosing, or

1  divulging those ideas or materials without the other party's permission and without

2  compensating and crediting the other party if any of the ideas or materials are used.

3      102.   Defendants' conduct implied and led Esplanade reasonably to believe

4  that Defendants would not use, disclose, or divulge those ideas or materials without

5  Esplanade's permission and would compensate and credit Esplanade if Defendants

6  or any of their affiliates used any of Esplanade's ideas or materials in any motion

7  picture, television program, merchandise, or otherwise.

8      103.   Esplanade performed all conditions, covenants, and promises required

9  to be performed on its part in accordance with its agreement with Defendants.

10     104.   Defendants breached, and continue to breach, its confidence with

11 Esplanade by disclosing, divulging, and using those ideas and materials in the

12 Disney Zootopia, the Zootopia Merchandise, and otherwise without Esplanade's

13 permission and without compensating or crediting Esplanade.

14     105.   As an actual and proximate result of Defendants' material breaches of

15 confidence, Esplanade has suffered, and will continue to suffer, damages in an

16 amount to be proved at trial.

17     106.   Defendants' breaches of confidence were despicable and were

18 committed maliciously, fraudulently, and oppressively with willful and conscious

19 disregard of Esplanade's rights and with the wrongful intent to injure Esplanade.

20 Defendants subjected Esplanade to extreme hardship, and by of way of its

21 intentional deceit, misrepresentation, and/or concealment of material facts,

22 Defendants intentionally deprived Esplanade of property or legal rights to

23 Esplanade's detriment and Defendants' financial benefit.

24     107.   Defendants' breaches of confidence were especially reprehensible

25 because, Esplanade is informed and believes, Defendants' conduct was part of a

26 repeated corporate practice and not an isolated occurrence.  Esplanade is informed

27 and believes, and on that basis alleges, that Defendants have substantially increased

28 their profits, and the profits of their affiliates, as a result.

108.   Defendants' breaches of confidence have caused, and continue to cause, Esplanade irreparable harm, for which Esplanade has no adequate remedy at law.  Unless this Court restrains Defendants from wrongfully using, disclosing, and divulging Esplanade's novel and confidential ideas and materials, these injuries will continue to occur in the future.  Accordingly, Esplanade is entitled to preliminary and permanent injunctive relief restraining Defendants from further use, disclosure, or divulgement of Esplanade's novel and confidential ideas and materials.

## FOURTH CLAIM FOR RELIEF

**Unfair Competition – *Cal. Bus. & Prof. Code* §§ 17200, *et seq.* and common law**
**(Against All Defendants)**

109.   Esplanade repeats and realleges each and every allegation contained in Paragraphs 1 through 83, above, as though fully set forth herein.

110.   Section 17200 of the *California Business and Professions Code* prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

111.   By engaging in the conduct alleged above, Defendants have engaged in unlawful, unfair, and/or fraudulent business acts of unfair competition in violation of *California Business and Professions Code* sections 17200, *et seq.*, and California common law.  Such conduct includes, *inter alia*, Defendants' breach of confidence and inducement of breach of confidence, Defendants' interference with Esplanade's ability to compete by diluting the value of the Goldman Zootopia and by failing to disclose Esplanade's role in conceiving of and creating the Disney Zootopia, and Defendants' misrepresentations to consumers, the entertainment industry, and others in the public that Defendants' conceived of and created the Disney Zootopia without any participation or contribution by Esplanade.

112.   As an actual and proximate result of Defendants' unfair competition, Defendants have unjustly enriched themselves by, *inter alia*, obtaining profits,

depriving Esplanade of compensation to which Esplanade is rightly entitled, and taking credit for Esplanade's ideas and materials. Accordingly, Esplanade is entitled to restitution of such sums in an amount to be proved at trial.

113. As an actual and proximate result of Defendants' unfair competition, Esplanade has suffered, and will continue to suffer, substantial, immediate, and irreparable harm including, *inter alia*, the failure to receive credit for conceiving of and creating Zootopia, for which there is no adequate remedy at law. Esplanade is informed and believes, and on that basis alleges, that Defendants will continue to engage in unfair competition in violation of *California Business and Professions Code* sections 17200, *et seq.* and common law, unless enjoined or restrained by this Court. Accordingly, Esplanade is entitled to preliminary and permanent injunctive relief restraining further unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Esplanade prays for judgment in its favor and against Defendants, and each of them, as follows:

A. That Defendants be adjudged to have willfully infringed Esplanade's copyright in the Goldman Zootopia in violation of 17 U.S.C. §§ 106 and 501;

B. That Defendants be preliminarily and permanently enjoined from infringing Esplanade's copyright in the Goldman Zootopia, including (i) producing, reproducing, preparing derivative works based on, distributing, performing, or displaying any work that is substantially similar to the Goldman Zootopia, (ii) reproducing, preparing derivative works based on, distributing, performing, or displaying the Disney Zootopia, (iii) producing, reproducing, preparing derivative works based on, distributing, or displaying books, toys, video games, costumes, and/or other merchandise based on the Goldman Zootopia or the Disney Zootopia, and (iv) engaging in any other action which infringes Esplanade's copyright;

33

C.    That Defendants be preliminarily and permanently enjoined from engaging in further acts of unfair competition;

D.    That Defendants' products and materials that infringe Esplanade's copyright, as well as Defendants' plates, molds, masters, tapes, film negatives, and other articles by which copies of the works embodied in Esplanade's copyright may be reproduced, be impounded pursuant to 17 U.S.C. § 503(a);

E.    That Defendants' products and materials that infringe Esplanade's copyright, as well as Defendants' plates, molds, masters, tapes, film negatives, and other articles by which copies of the works embodied in Esplanade's copyright may be reproduced, be destroyed pursuant to 17 U.S.C. § 503(b);

F.    That Defendants be required to account to Esplanade for all profits derived from their use of the Goldman Zootopia and their production, reproduction, preparation of derivative works based on, distribution, performance, and display of the Disney Zootopia or the Zootopia Merchandise in all media, from all sources, worldwide;

G.    That Defendants be ordered to pay to Esplanade all damages, including future damages, that Esplanade has sustained, or will sustain, as a consequence of the acts complained of herein, and that Esplanade be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting;

H.    That Defendants be ordered to pay to Esplanade punitive damages as a result of Defendants' wanton, deliberate, malicious, and willful misconduct;

I.    That Defendants be ordered to pay to Esplanade the full costs of this action and Esplanade's reasonable attorneys' fees and expenses;

J.    That Defendants be ordered to pay to Esplanade pre-judgment and post-judgment interest on all applicable damages; and

1         K.      That Esplanade have such other and further relief as the Court deems

2 just and proper.

3

4 DATED:  March 21, 2017        QUINN EMANUEL URQUHART &

5                                     SULLIVAN, LLP

6                        By  */s/ Jeffery D. McFarland*

7                             Jeffery D. McFarland

8                             *Attorneys for Plaintiff*
                            *Esplanade Productions, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2   Plaintiff Esplanade Productions, Inc. hereby demands trial by jury on all

3  issues so triable, pursuant to Fed. R. Civ. P. 38(b).

4

5  DATED:  March 21, 2017   QUINN EMANUEL URQUHART &

6            SULLIVAN, LLP

7         By  */s/ Jeffery D. McFarland*

8          Jeffery D. McFarland

           *Attorneys for Plaintiff*

9          *Esplanade Productions, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36