DANIEL M. PETROCELLI (S.B. # 97802)
dpetrocelli@omm.com
JAMES M. PEARL (S.B. # 198481)
jpearl@omm.com
CRAIG P. BLOOM (S.B. #314406)
cbloom@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California  90067-6035
Telephone:   +1 310 553 6700
Facsimile:    +1 310 246 6779

Attorneys for Defendants
The Walt Disney Company, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPLANADE PRODUCTIONS, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WALT DISNEY PICTURES, a California corporation; ABC, INC., a New York corporation; BUENA VISTA HOME ENTERTAINMENT, INC., a California corporation; DISNEY CONSUMER PRODUCTS, INC., a California corporation; DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA, INC., a California corporation; DISNEY BOOK GROUP, LLC, a Delaware limited liability company; BUENA VISTA BOOKS, INC., a California corporation; DISNEY INTERACTIVE STUDIOS, INC., a California corporation; DISNEY STORE USA, LLC, a Delaware limited liability company; DISNEY SHOPPING, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:17-cv-02185-MWF-JC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Hearing Date:** June 26, 2017<br>**Hearing Time:** 10:00 a.m.<br>**Place:** Courtroom 5A<br>**Judge:** Hon. Michael W. Fitzgerald<br><br>**Action Filing Date:** March 21, 2017 |

1   TO PLAINTIFF ESPLANADE PRODUCTIONS, INC. AND ITS COUNSEL OF

2   RECORD:

3        PLEASE TAKE NOTICE that on June 26, 2017, at 10:00 a.m., or as soon

4   thereafter as the matter may be heard, in Courtroom 5A of this Court, located at 350

5   West First Street, Los Angeles, California 90012, Defendants The Walt Disney

6   Company, Disney Enterprises, Inc., Walt Disney Pictures, ABC, Inc., Buena Vista

7   Home Entertainment, Inc., Disney Consumer Products, Inc., Disney Consumer

8   Products and Interactive Media, Inc., Disney Book Group, LLC, Buena Vista

9   Books, Inc., Disney Interactive Studios, Inc., Disney Store USA, LLC, and Disney

10  Shopping, Inc., (collectively, "Defendants") will appear and move the Court for an

11  order dismissing with prejudice the claims for relief asserted against them by

12  Plaintiff Esplanade Productions, Inc. under Rule 12(b)(6) of the Federal Rules of

13  Civil Procedure.  This Motion is made on the grounds that Plaintiff's Complaint

14  fails to state a claim upon which relief can be granted.

15       This Motion to Dismiss is made following the conference of counsel

16  pursuant to Central District Local Rule 7–3, which took place on April 19, 2017.

17  (*See* Bloom Decl. ¶¶ 2–3.)

18       This Motion is based on the files, records, and proceedings in this action, this

19  Notice, the following Memorandum of Points and Authorities, the concurrently

20  filed Declaration of Craig P. Bloom and exhibits thereto, the attached Request for

21  Judicial Notice, the reply memorandum that Defendants intend to file, the

22  arguments of counsel, and such other matters as may be presented at the hearing on

23  this Motion or prior to the Court's decision.

24

25

26

27

28

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  May 22, 2017

O'MELVENY & MYERS LLP


By:    /s/ Daniel M. Petrocelli
                Daniel M. Petrocelli

Attorneys for Defendants
The Walt Disney Company, et al.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ......................................................................................... 3

    A.  *Zootopia* ........................................................................................ 3

    B.  *Looney* .......................................................................................... 5

III.  LEGAL STANDARD ................................................................................. 6

IV.  PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT
     INFRINGEMENT ....................................................................................... 7

    1.  Plot and Sequence of Events ............................................... 7

    2.  Characters, Artwork, and Merchandise ....................................... 12

    3.  Dialogue and Title .................................................................... 18

    4.  Themes ....................................................................................... 20

    5.  Settings ...................................................................................... 21

    6.  Mood and Pace .......................................................................... 23

    7.  Selection, Arrangement, and Combination of Elements ............ 23

V.  PLAINTIFF IS BARRED FROM RECOVERING ATTORNEYS'
    FEES AND STATUTORY DAMAGES ..................................................... 23

VI.  PLAINTIFF'S STATE-LAW CLAIMS FAIL AS A MATTER OF
     LAW ......................................................................................................... 24

VII.  CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) ...................................................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 6

*Basile v. Twentieth Century Fox Film Corp.*,
   2014 WL 12521340 (C.D. Cal. Aug. 19, 2014) ................................... 3, 10

*Basile v. Warner Bros. Entm't, Inc.*,
   2016 WL 5867432 (C.D. Cal. Jan. 1, 2016) ........................................ 9, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 7

*Benay v. Warner Bros. Entm't*,
   607 F.3d 620 (9th Cir. 2010) ............................................................. 24, 25

*Buggs v. Dreamworks, Inc.*,
   2010 WL 5790251 (C.D. Cal. Dec. 28, 2010) ........................................... 8

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) ............................................. passim

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ......................................................... 7, 20, 21

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
   697 F. Supp. 1136 (E.D. Cal. 1987) ........................................................ 12

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ................................................................... 24

*DuckHole Inc. v. NBC Universal Media LLC*,
   2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) .......................................... 14

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006) ................................................................... 7

*Gallagher v. Lions Gate Entm't, Inc.*,
   2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................ passim

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ..................................................................... 9

*Mandeville-Anthony v. Walt Disney Co.*,
   2012 WL 4017785 (C.D. Cal. July 28, 2012) ................................... passim

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4

*Olson v. Nat'l Broad. Co.,*
  855 F.2d 1446 (9th Cir. 1988) ................................................................. 19

5

*Rosenfeld v. Twentieth Century Fox Film,*
  2009 WL 212958 (C.D. Cal. Jan. 28, 2009) .................................... passim

6
7

*Segal v. Rogue Pictures,*
  544 Fed. Appx. 769 (9th Cir. 2013) .......................................................... 7

8

*Shame on You Prods., Inc. v. Banks,*
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ................................................... 13

9
10

*Silberstein v. John Does,*
  242 F. App'x 720 (2d Cir. 2007) .............................................................. 15

11

*Thomas v. Walt Disney Co.,*
  2008 WL 425647 (N.D. Cal. Feb. 14, 2008) ................................... passim

12
13

*Williams v. Crichton,*
  84 F.3d 581 (2d Cir. 1996) ...................................................................... 22

14
15

*Zella v. E.W. Scripps Co.,*
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) .................................................. 3, 7

16

**STATUTES**

17

17 U.S.C. § 301 ............................................................................................... 24

18

17 U.S.C. § 412(2) .................................................................................... 23, 24

19

Cal. Bus. & Prof. Code § 17200 .................................................................... 24

20

**RULES**

21

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6

22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In March 2016, Defendants began distributing the animated motion picture *Zootopia* (hereafter "*Zootopia*").  *Zootopia* grossed over a billion dollars at box offices worldwide and won an Academy Award for Best Animated Feature Film. In February 2017, nearly a year after *Zootopia*'s release, Plaintiff Esplanade Productions, Inc. applied for a copyright of a synopsis and treatment of a live-action movie called *Looney* (hereafter "*Looney*") as well as related character descriptions and illustrations.  A month after that, Plaintiff filed this lawsuit complaining that *Zootopia* infringed its work.  This is just another example in a long history of plaintiffs coming out of the woodwork after a motion picture has achieved critical and financial success to claim credit—and proceeds—where none is due.

To state a claim for copyright infringement in the Ninth Circuit, a plaintiff must demonstrate that the protected elements of the works are substantially similar. Although Plaintiff has refused to provide to Defendants any of the materials purportedly infringed, it is apparent even from the face of the Complaint that *Zootopia* and *Looney* are not substantially similar:

First, Plaintiff's work[1] is described in the Complaint as a synopsis and treatment for a live-action motion picture entitled *Looney*.  *Looney* is facially dissimilar to Defendants' animated motion picture entitled *Zootopia*.  *See Rosenfeld v. Twentieth Century Fox Film*, 2009 WL 212958, at *2 (C.D. Cal. Jan. 28, 2009) (finding no substantial similarity between interactive live action show and animated movie).

---

[1] In practice, a synopsis and treatment amount to little more than a "pitch" of an idea rather than a fully developed work.  Plaintiff also alleges that it submitted these "pitch" materials twice: first in 2000 to Mandeville Films (which is neither a named defendant nor related to one) and then again in 2009 to Defendant Walt Disney Pictures.  Despite the fact that the Complaint relies entirely on these materials, they were not attached to the Complaint and have not been produced to Defendants.

Second, *Looney* is based on a human protagonist who creates a cartoon world of animated anthropomorphic animals.  *Zootopia* is the name of a city in a wholly fictional world populated by animated anthropomorphic talking animals; there are no human characters in *Zootopia*.

Third, Plaintiff does not claim that *Zootopia*'s main characters are substantially similar to any one *Looney* character standing alone, and instead relies on amalgamations of various *Looney* characters' traits that, even in combination, fail to establish a substantial similarity.  None of the main or side characters compared in Plaintiff's complaint are even of the same species.  In addition to stylistic and artistic differences, Plaintiff's character images are also dissimilar in that *Zootopia*'s characters wear clothing throughout the motion picture, while *Looney's* characters wear no clothing at all.

Finally, Plaintiff's allegations fail to sustain a claim that any dialogue is substantially similar.  *Zootopia* runs nearly two hours and contains about 20,000 words of dialogue, yet Plaintiff alleges just one sentence that is similar to the dialogue in *Looney* and one sentence that resembles a description of one *Looney* character in the Complaint.

Tellingly, Plaintiff has not attached to the Complaint a copy of its synopsis, treatment or copyright application, thereby preventing both the Court and Defendants from performing a complete side-by-side comparison.  Without Plaintiff's work, Defendants are left to compare Plaintiff's characterizations of the pitch materials—as opposed to the content of the materials themselves—with a full-length motion picture.  Even so, Plaintiff's cherry-picked descriptions fail to show any similarity between *Looney* and *Zootopia*.  Perhaps recognizing the stark differences between the works, Plaintiff alternates between strained comparisons on the one hand to describing long portions of *Zootopia* without identifying any substantially similar elements on the other.  The latter only underscores the oddity of Plaintiff not attaching the *Looney* pitch materials to its Complaint in the first

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

place.  This Complaint should be dismissed with prejudice.

## II.    BACKGROUND

### A.    *Zootopia*

*Zootopia* is a fully-animated motion picture set in a fictional world populated entirely by 64 different species of anthropomorphic talking animals.  It opens in Bunnyburrow, a farming suburb where the picture's heroine, Judy Hopps, is performing in a play about the evolution of animals.  (*See* Bloom Decl. Ex. A at 00:01.)[2]  Judy, an idealistic, popular, and loyal little bunny, reveals her dream to make the world a better place by becoming a police officer.

Years later, Judy follows her dream by graduating from the Zootopia Police Department's training academy to become Zootopia's only rabbit officer.  (*See id.* at 00:05.)  On her first day, Chief Bogo, a buffalo, assigns Judy to parking duty instead of giving her the missing-animal assignment the other officers get.  (*See id.* at 00:16.)  She is disappointed, but determined to prove herself a capable officer.

During her lunch break, Judy sees Nick Wilde, a small-time con-artist fox, entering an ice cream shop for elephants.  (*See id.* at 00:20.)  Nick tries to order a popsicle, but is refused service.  Feeling sorry for him, Judy intervenes and pays for the giant-sized popsicle, but later she sees him melting it down in Sahara Square to make smaller popsicles for resale.  Judy has been scammed.

---

[2]    In the concurrently filed Request for Judicial Notice In Support Of Defendants' Motion To Dismiss, Defendants request that the Court take judicial notice of a DVD of the motion picture *Zootopia* because Plaintiff refers to it extensively in the Complaint and its authenticity is indisputable.  *See, e.g.*, *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) ("a court may consider documents which are not physically attached to the complaint but whose contents are alleged in the complaint and whose authenticity no party questions"); *Gallagher v. Lions Gate Entm't, Inc.*, 2015 WL 12481504, at *2, n.2 (C.D. Cal. Sept. 11, 2015) (taking judicial notice of the motion picture *The Cabin in the Woods*); *Basile v. Twentieth Century Fox Film Corp.*, 2014 WL 12521340, at *2 (C.D. Cal. Aug. 19, 2014) (taking judicial notice of allegedly infringing motion picture *Prometheus*); *Thomas v. The Walt Disney Co.*, 2008 WL 425647, at *2, n.1 (N.D. Cal. Feb. 14, 2008) (taking judicial notice of allegedly infringing motion picture *Finding Nemo*).

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1  Back at police headquarters, Judy overhears a distressed Mrs. Otterton, an
2  otter, trying to find her husband.  She volunteers to take the case, but without first
3  consulting Chief Bogo.  (*See* Bloom Decl. Ex. A at 00:30.)  Rather than fire Judy
4  for insubordination, though, Chief Bogo makes a deal:  either find the missing Mr.
5  Otterton in 48 hours or resign.  Judy enthusiastically accepts.

6  Judy's detective work reveals that Mr. Otterton was last seen with Nick.  (*See*
7  *id.* at 00:35.)  Outfoxing Nick at his own game, Judy uses a disguised voice
8  recorder to get Nick to incriminate himself for tax evasion based on his unreported
9  sales of popsicles.  Upon her promise to give him the recording, Nick grudgingly
10  agrees to help Judy find the missing otter.

11  Judy and Nick discover a panther named Manchas has been inexplicably
12  attacked by Mr. Otterton.  They find Manchas, severely injured, in the Rainforest
13  District.  (*See id.* at 00:52.)  Manchas tells them that Mr. Otterton's disappearance
14  had something to do with "night howlers," but before they can figure out what that
15  means, Manchas turns on them and attacks.  In the resulting chaos, Judy saves
16  Nick's life, then handcuffs Manchas and calls in police reinforcements.  When
17  Chief Bogo arrives on the scene, though, Manchas has mysteriously disappeared,
18  and Judy has no evidence to prove what she just did.

19  Judy and Nick visit Assistant Mayor Bellwether, a sheep, who has access to
20  Zootopia's surveillance cameras.  (*See id.* at 01:01.)  Reviewing surveillance
21  footage, Judy and Nick see that Manchas had been taken by a pack of wolves to the
22  Cliffside Asylum.  Judy deduces that the wolves are the "night howlers."

23  Judy and Nick sneak into the asylum and discover Manchas, Mr. Otterton,
24  and the other missing Zootopia animals for whom the police had been searching.
25  (*See id.* at 01:06.)  They are shocked to learn that Mayor Lionheart, a lion, is
26  involved in the abductions.  He is arrested, the missing animals are freed, and Judy
27  becomes the hero cop she always hoped she could be.

28  Later that day, Judy announces to the media that the missing animals were all

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

predators, inadvertently suggesting they are naturally inclined to turn savage. (*See id.* at 01:11.)  Nick, himself a predator, is offended by this, and Judy's comments spread a wave of fear across Zootopia.  Although Chief Bogo implores her to stay on, Judy resigns and returns to Bunnyburrow.  Back home, she learns that a flower nicknamed "night howler" can cause animals—both predator and prey alike—to act savagely if its pollen enters their system so she realizes that the "night howlers" were not wolves, but rather these dangerous flowers. (*See id.* at 01:16.)  She races back to Zootopia, where she and Nick team up again.

Nick and Judy discover a lab where sheep are using "night howlers" to create a dangerous blue serum that turns animals savage. (*See id.* at 01:23.)  They steal a briefcase containing the blue serum, and are pursued and then trapped by a herd of sheep.  They learn that Bellwether, who has now become mayor, is the mastermind behind a scheme to gain political power by driving the mostly "prey" population to fear a minority of savage predators.  Bellwether shoots Nick with the serum, expecting him to turn savage and attack Judy, but Nick and Judy had swapped blueberries for the serum and recorded Bellwether admitting to the scheme.  Nick and Judy emerge unharmed and Bellwether is arrested.

Zootopia begins to heal, with prey and predator working together again. Judy delivers a speech to Zootopia's new police cadets, including Nick, encouraging them to "try to make the world a better place."  The story closes with Judy and Nick as partners, helping to protect Zootopia.

### B.   *Looney*

Plaintiff's Complaint describes *Looney* as a treatment and synopsis for a live-action motion picture based on "a human animator who creates a cartoon world of animated anthropomorphic animal characters." (Compl. ¶ 53.)  The treatment and synopsis were written in or around 2000 by Plaintiff's Chief Executive Officer, Gary L. Goldman. (*Id.* ¶¶ 30–32.)  Mr. Goldman also wrote descriptions of *Looney's* main characters, and hired a cartoonist to create visual images of them.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

(*Id.*)  On February 10, 2017—almost one year after *Zootopia*'s release—Plaintiff filed an application for registration with the U.S. Copyright Office.  (*Id.* ¶ 34.)  The application apparently contained the *Looney* synopsis and treatment as well as character descriptions and drawings now entitled "Zootopia."  (*Id.*)

*Looney* is the story of a human animator and his animated work.  (*Id.* ¶ 70.)  The animator is a young and uncool kid living in a small town with his parents.  (*Id.* ¶ 72.)  As a child, the animator is bullied by a bigger, stronger, and mean kid.  (*Id.*)  Although the animator's parents discourage him from achieving certain career aspirations, he attends college, where he excels, achieves recognition, and earns an opportunity to go to the city for his dream job.  (*Id.* ¶¶ 56, 72.)  Plaintiff makes no reference to an animated heroine.

In the city, the animator comes up against a strong, powerful, and entrenched boss who wants to maintain control over him.  (*Id.* ¶ 73.)  The animator is obsessed with his work and goes to extreme lengths in pursuit of success, even taking principled stances in defiance of his boss.  (*Id.*)  He partners with another character, who helps him achieve success by solving a problem with characters in an unidentified, generic asylum.  (*Id.* ¶ 73.)  Eventually, success goes to the animator's head, and he publicly offends others, alienates his partner, and shows his own prejudices.  (*Id.*)  The animator loses his job, and is unable to complete an important project.  (*Id.*)

The animator leaves the city and returns to his hometown to live and work with his parents.  (*Id.* ¶ 74.)  He re-encounters the childhood bully, who has overcome his prejudices and turned into a good person.  (*Id.*)  The animator learns how to overcome his own prejudices, reconciles with his partner, and finishes the project.  (*Id.* ¶¶ 74–75.)

### III.   LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must be plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

requires "more than a sheer possibility" of unlawful conduct. *Id.* Factual

allegations must go beyond "labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

To state a claim for copyright infringement, a plaintiff must demonstrate that

"the works at issues are substantially similar in their protected elements." *Zella*,

529 F. Supp. 2d at 1133 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822

(9th Cir. 2002)).  Courts apply the "extrinsic test" to assess substantial similarity on

a motion to dismiss. *Id.* (citing *Funky Films, Inc. v. Time Warner Entm't Co.*, 462

F.3d 1072, 1077 (9th Cir. 2006)).  This extrinsic test need not await discovery and

summary judgment. *Id.*  The test involves an objective analysis of specific

expressive elements of each work that "focuses on articulable similarities between

the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events."

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Courts inquire only whether "protectable elements, standing alone, are substantially

similar." *Cavalier*, 297 F.3d at 822.  Non-protectable elements in the form of

"general plot ideas," "stock scenes and themes," and "scenes-a-faire [involving]

situations and incidents that flow necessarily or naturally from a basic plot premise"

therefore must be "filter[ed] out and disregard[ed]." *Id.* at 822–23.  "[N]o amount

of proof of access will suffice to show copying if there are no similarities." *Segal v.

Rogue Pictures*, 544 Fed. Appx. 769, 770 (9th Cir. 2013).

### 1.   Plot and Sequence of Events

*Looney* and *Zootopia* are unique to each and dissimilar to each other.  *Looney*

is a treatment and synopsis for a live-action picture about the struggles and growth

of a male human animator who creates a world of animated characters.  (Compl. ¶¶

53, 70, 72.) *Zootopia* is an animated motion picture about a bunny protagonist who

7

1  interacts only with anthropomorphic talking animals.  There are no humans, and
2  there is no live-action component.

3      In *Rosenfeld*, the plaintiff claimed copyright infringement by the defendants'
4  animated motion picture *ROBOTS.*  2009 WL 212958.  The court dismissed,
5  holding that the works were not substantially similar because the plaintiff's
6  screenplay involved a live-action component and featured human characters.  *Id.* at
7  *2–3.  Like the screenplay in *Rosenfeld*, Plaintiff's treatment and synopsis are for a
8  live-action motion picture featuring human characters.  This is facially different
9  from Defendants' fully animated motion picture.

10     To demonstrate substantial similarity of two plots, the plaintiff "must show
11 similarities of expressions in . . . specific details rather than allege similarities of
12 general plot ideas."  *Buggs v. Dreamworks, Inc.*, 2010 WL 5790251, at *5 (C.D.
13 Cal. Dec. 28, 2010); *see also Thomas*, 2008 WL 425647, at *3 ("basic plot ideas are
14 not protected by copyright law").  Beyond the fundamental differences in the type
15 of motion picture Plaintiff intended its project to be, Plaintiff fails to plead plot
16 similarities that are protected by copyright law.

17     Plaintiff has clearly conformed the description of its *Looney* synopsis and
18 treatment in the Complaint to Defendants' motion picture *Zootopia* in an effort to
19 manufacture similarities between them.  Without a synopsis and treatment being
20 attached to the Complaint, however, the Court is left to compare a finished motion
21 picture with the bare elements Plaintiff has chosen to plead.  The potential for
22 drawing comparisons where none actually exist is exacerbated by the Complaint's
23 descriptions of the *Zootopia* characters and plotline without any specific allegation
24 that the *Looney* synopsis and treatment specifically contain similar elements.
25 (Compl. ¶¶ 63–76.)  Even when the Plaintiff does make actual comparisons,
26 Plaintiff only pleads similarity of high-level ideas such as plots involving "young,
27 uncool heroes who live in small towns with their parents."  (*Id.* ¶ 72.)  Plaintiff
28 obscures but ultimately admits that its hero is a human animator in a live-action

8

picture[3] whereas the *Zootopia* hero is an animated bunny living in an animated world. Plaintiff's allegations really only describe a buddy movie that features two contrasting protagonists who partner to solve a problem in the face of adversity, precisely the kind of "basic plot idea" that courts have consistently dismissed as unprotected. For example, in *Mandeville-Anthony v. Walt Disney Co.*, the plaintiff claimed copyright infringement based on the defendants' animated motion picture *Cars*. 2012 WL 4017785 (C.D. Cal. July 28, 2012). The court rejected the plaintiff's assertion that the plots were substantially similar based on the fact that both involved "anthropomorphic cars . . . with the backdrop of a race." *Id.* at *2. The court held that such basic plot ideas are not protected, and dismissed the case. *Id.* Likewise, in *Thomas*, the plaintiff claimed copyright infringement based on the defendants' animated motion picture *Finding Nemo*. 2008 WL 425647. The court held as unprotected the basic plot idea of "young fish in the ocean that are captured by divers and put in a fish tank." *Id.* at *3.

Plaintiff's *Looney* plot idea of two characters solving a problem in the face of adversity is basic and unprotected. That the heroes "go to the big city for their dream jobs," "have partners who help them achieve success," and "overcome their own internal prejudices" in order to complete an "unfinished project," (*Id.* ¶¶ 72–75,) are no substitute for what the pleading standard requires. *See, e.g.*, *Basile v. Warner Bros. Entm't, Inc.*, 2016 WL 5867432, at *6 (C.D. Cal. Jan. 1, 2016) (dismissing copyright infringement claims and holding as unprotected the basic plot idea of "a humble hero with a previously unknown powerful ancestry who learns his true identity and must save his home planet"); *Gallagher*, 2015 WL 12481504, at *4 (dismissing copyright infringement claims and holding as unprotected the basic plot idea of "students travelling to remote locations and subsequently being

---

[3] Plaintiff's failure to attach to the Complaint a copy of its *Looney* synopsis and treatment has obscured the precise nature of *Looney's* story, but Defendants deduce from the sparse allegations that *Looney's* hero is actually a human animator.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

murdered"); *Basile*, 2014 WL 12521340, at *6 (dismissing copyright infringement claims and holding as unprotected the "vague element of creation of some type of life in each work"); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1112 (N.D. Cal. 2010) (dismissing copyright infringement claims against Disney based on the animated motion picture *Cars* and holding as unprotected the basic plot idea of "a cocky young race-car driver . . . who learns life lessons from an older mentor"); *Rosenfeld*, 2009 WL 212958, at *3 (dismissing copyright infringement claims based on the animated motion picture *ROBOTS* and holding as unprotected the basic plot idea of "efforts to replace humans [with robots]"). Nor are these events even comparable to *Zootopia* in which there is no "unfinished project."

Plaintiff's claim that "concrete [plot] elements" were "copied" fares no better than its stock general similarities. (Compl. ¶ 72.) First, Plaintiff's plotline regarding the human animator can bear no possible resemblance to *Zootopia* because the latter contains no human characters. *See, e.g.*, *Rosenfeld*, 2009 WL 212958, at *2 (distinguishing the plot of plaintiff's work from that of defendants' work because the defendants' picture "by contrast, has no human characters at all"); *Campbell*, 718 F. Supp. 2d at 1115 ("As an initial matter, the Court recognizes that [the plaintiff's work] involves human characters whereas [the defendants' work] involves animated automobile characters"). Second, even assuming that Plaintiff's plotline regarding the human animator could somehow be compared to *Zootopia*, it is clear that no substantial similarities exist. For example, Plaintiff complains that *Looney* is substantially similar to *Zootopia* because both involve characters who "go to academies where they excel, achieve recognition for their work, and earn the opportunity to go to the big city for their dream job." (Compl. ¶ 72.) However, *Looney's* character attends college, while *Zootopia*'s heroine Judy attends a police training academy to become a police officer. (*Id.* ¶ 56.) The allegations therefore fall well short of demonstrating any similarity—let alone substantial—because the underlying plots are profoundly different.

10

Plaintiff further alleges that substantial similarity exists because characters in both works "come up against strong, powerful, and entrenched bosses who want to maintain control over" them.  (*Id.* ¶ 73.)  Judy's boss, Bogo, is the chief of a major metropolitan police department and the "control" asserted over Judy involves initially withholding assignment of a desirable police-related task that is later given to her.  Nor does Judy "take[] principled stances in defiance of" Bogo as Plaintiff contends.  (*Id.* ¶ 72.)  Plaintiff includes no allegations in its Complaint describing the animator's boss or the nature of "control" that he asserts.  Plaintiff also claims substantial similarity based on the fact that characters in *Looney* and *Zootopia* "encounter their former bullies . . . [and] learn from [them] to overcome their own internal prejudices and appreciate their former partners." (*Id.* ¶ 74.)  In *Zootopia*, there are several scenes that involve a predator animal bullying a prey animal (or vice-a-versa) to illustrate the theme of bias and prejudice between different species.  Plaintiff's allegations describe the bullying in *Looney* only as occurring "in private male-only rooms." (*Id.* ¶ 56.)

Finally, Plaintiff alleges similarity because the characters in both works "must solve a problem with the madness of out-of-control Zootopia characters in an asylum." (*Id.* ¶ 75.)  However, Plaintiff fails to allege any specific similarities regarding the nature of the problem, how the characters ended up in an asylum, or the way in which the heroes eventually solved the problem.  In *Zootopia*, Judy and Nick uncover a problem involving civilized predators suddenly returning to their savage and instinctual states.  They learn that those animals were missing because they had been forcibly brought to an asylum to shield their savage drug-induced condition from the public.  Judy and Nick discover that the problem is derived from the effects of psychedelic plants, track down the antagonist responsible for the scheme, and trick her into admitting guilt.  Plaintiff offers three sentences with absolutely no detail of the problem purportedly solved in *Looney*.  This failure to provide any substance is no accident; Plaintiff in its Complaint took liberties in

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

drawing connections between even the most remote of themes and concepts.  Here, Plaintiff's failure to provide any description of why the problems solved in *Looney* were substantially similar to *Zootopia* shows that not even remote comparisons could be made because *Zootopia* is fundamentally different from *Looney*.

### 2.   Characters, Artwork, and Merchandise

Plaintiff asserts that the ensemble of characters in *Looney* is substantially similar to the ensemble in *Zootopia* because both ensembles "represent[] a diverse ethnic and cultural society . . . with a multi-tiered class and power structure constituted by animals of different species from different places with different natures, sizes, strengths, psychologies, and philosophies." (Compl. ¶ 64.)  In other words, Plaintiff claims similarity based on the simple fact that both sets of characters exemplify a "model of society."  (*Id.*)  No one can claim a legal monopoly on a cast of characters representing America's melting pot.

Characters that "naturally flow from a basic plot idea are scenes-a-faire not protected by copyright."  *Campbell*, 718 F. Supp. 2d at 1115.  *Zootopia* is based entirely on animated anthropomorphic animal characters living and working in a modern, civilized society, whereas *Looney* allegedly involves a mix of animal and human characters.  The use of different animal species naturally flows from these ideas.  *See Thomas*, 2008 WL 425647, at *5 ("the fact that both [characters] are talking fish directly flows from the idea of a young fish discovering the ocean").  That characters are animated anthropomorphic animals does not by itself transform a generic cast into a copyrightable expression.  The mere use of animated animals in motion pictures is unprotected by copyright law and cannot sustain a claim of substantial similarity.  *See, e.g.*, *Mandeville-Anthony*, 2012 WL 4017785, at *3 (holding as unprotected the idea of animated, anthropomorphic car characters because "[f]or decades, cartoons have featured real-life objects that can talk and have personalities"); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1144 (E.D. Cal. 1987) (holding as unprotected the "common idea of an

1   anthropomorphic raisin").

2        Plaintiff also claims that certain "main" and "side" characters in *Zootopia* are

3   substantially similar to those in *Looney*. (Compl. ¶¶ 66–69.)  The general rule is

4   that characters "are not afforded copyright protection" unless they are "especially

5   distinctive." *Gallagher*, 2015 WL 12481504, at *7; *see also Shame on You Prods.,*

6   *Inc. v. Banks*, 120 F. Supp. 3d 1123, 1164 (C.D. Cal. 2015) (holding that "[o]nly

7   distinctive characters are protectable, not characters that merely embody

8   unprotected ideas").  Character traits that "flow naturally from the works' shared

9   premises" may not serve as a basis for infringement.  *Gallagher*, 2015 WL

10  12481504, at *7.  Nor can substantial similarity be based on "shared attributes of

11  appearance and general demeanor that are generic and common."  *Id.*

12       As a threshold matter, it is unclear from the Complaint whether there even

13  exists an animated protagonist character in the *Looney* materials.  The animated

14  characters that are described as similar to the main characters of *Zootopia* are not

15  even alleged to be primary characters.  Instead, *Looney* appears to be principally

16  about the trials and tribulations of a human animator.

17            a.  <u>Defendants' Character Judy and Plaintiff's Characters Mimi and Hugo</u>

18       Plaintiff alleges that Judy Hopps's characteristics are substantially similar to

19  those of its Mimi and Hugo.  (Compl. ¶ 66.)  That Plaintiff combines the traits of

20  two different characters is telling; it shows that Judy is not—and cannot be—

21  substantially similar to any one of Plaintiff's characters standing alone.  Defendants

22  are aware of no cases in which a court found substantial similarity based solely on a

23  composite of traits drawn from multiple characters.

24       Plaintiff's attempt at comparing *Looney's* characters with Judy, the main

25  character in *Zootopia*, is written in a highly confusing manner that obscures a

26  critical distinction between the plots and the main characters.  (Compl. ¶ 66.)

27  Plaintiff starts out by describing Mimi as a squirrel and concludes that Mimi and

28  Judy are "visually similar" because both are "small, furry, 'cute' prey animals with

13

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

big eyes and oversized appendages." (Compl. ¶ 66.)  Plaintiff does not, however, allege that Mimi, *like Judy*, is the (or even *a*) main character, much less the heroine. In fact, Mimi appears to be a minor character; Plaintiff compares her to Judy simply because both are small female animals.  Plaintiff then pivots in the same paragraph from describing Mimi to proposing—without even describing—comparisons with Hugo.  The Complaint is unclear as to whether Hugo is the protagonist of *Looney* and conspicuously avoids providing any description, image, or detail about him. Even if Hugo were the protagonist, he appears to be a live-action, human, male protagonist.  Indeed, much of Plaintiff's Complaint simply describes generic characteristics of *Zootopia*'s protagonist and intimates that *Looney's* protagonist shares these characteristics without making any actual comparisons.  Descriptions of *Zootopia* with no actual comparisons to *Looney*, of course, do not support allegations of substantial similarity.

Even if we were to assume that Mimi and Hugo together have the same characteristics as Judy, they are stock and unprotectable characteristics.  For example, Plaintiff alleges that Judy is (i) "an outsider" who is "underestimated, unappreciated, and not taken seriously," (ii) "an underdog" who is "brave, energetic, determined, and enthusiastic," (iii) "help[ful]," (iv) "good natured, kindhearted, and constantly trying to improve herself and others," and (v) "naively idealistic and optimistic."[4]  (*Id.*)  Each of these vague characteristics falls short of being "distinctive" under copyright law.  *See, e.g., Campbell*, 718 F. Supp. 2d at 1115 ("[T]he characters generically labeled in the Complaint as a 'cocky kid' and an 'older mentor' are not protected by copyright law"); *DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797279, at *9 (C.D. Cal. Sept. 6, 2013) ("Being

---

[4]     Plaintiff also describes Judy as "uncool" and having been "bullied by a bigger, stronger, and mean kid."  (Compl. ¶ 72.)  To the contrary, Judy is depicted as popular.  Nor is she bullied; she rather heroically defends others from bullying and is assaulted for it.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

smart and ethnic are not protectable elements."); *Rosenfeld*, 2009 WL 212958, at *3 ("The Court finds similarly unconvincing the other random similarities that Plaintiffs point to, such as the fact that the heroes are young males with blonde girlfriends"); *Gallagher*, 2015 WL 12481504, at *8 ("The fact [that the characters] are both 'bubbly' is irrelevant because such characters are *scenes a faire*").

The Court should also reject Plaintiff's assertion that Judy's appearance is substantially similar to Mimi's because both are "small, furry, 'cute' prey animals with big eyes and oversized appendages." (Compl. ¶ 66.) If Plaintiff were entitled to a copyright on small, fury prey animals, "there would be few works [involving animated anthropomorphic animal characters] that do not infringe upon that common casting type." *Gallagher*, 2015 WL 12481504, at *8. But it is altogether clear that the characters are, in fact, different. Judy is a rabbit; Mimi is a squirrel. Judy is shown wearing a police officer's uniform; Mimi wears no clothing at all. Judy is a complex three-dimensional, full color, computer-animated character; Mimi is a two-dimensional hand drawing. No reasonable juror could view these two characters and conclude that they are substantially similar. *See Silberstein v. John Does*, 242 F. App'x 720, 722 (2d Cir. 2007) (holding that no reasonable juror could find substantial similarity between plaintiff's "crudely drawn two-dimensional, monochromatic, static character" and defendants' "three dimension[al]" character "rendered in lifelike detail and realistic color and shade").

### b. *Defendants' Character Nick and Plaintiff's Characters Roscoe and Monty*

Similarly, Plaintiff alleges that Nick's characteristics are substantially similar to an amalgamation of Roscoe and Monty in *Looney*, but provides no description of what these similarities are supposed to be. Much like its failure to provide any facts about Hugo, Plaintiff omits any detail or description of Monty (who could also be human). Moreover, as noted above, Plaintiff's reliance on the combination of two different characters by itself shows that Nick is not substantially similar to any one character standing alone. And even if it is assumed that Plaintiff's description of

15

Nick also applies to its *Looney* characters, there is still no substantial similarity because the described traits are stock and unprotectable.  Plaintiff alleges that Nick (i) "is an outcast," a "victim of prejudice," and "an underdog," (ii) "is a pessimist who embodies and expresses the cynical view of the world," (iii) "has a bad attitude, and is determined not to seek the approval of those who disdain him," and (iv) "is uncouth and brutally honest."  (Compl. ¶ 67.)  None of these traits are protected under copyright law.  *See Thomas*, 2008 WL 425647, at *5 ("[A] young character who is inquisitive and whose curiosity leads him or her into danger can be considered a stock character').  Many of them flow from the fact that the character is a fox, a carnivorous animal well known for its cunning.  *Mandeville-Anthony*, 2012 WL 4017785, at *3 ("The idea that some of the respective car characters share attributes that flow from their make and country of origin also tends against plaintiff's claim.").

Plaintiff also asserts that Nick is "visually similar" to Roscoe because both are "dog-like predators who appear sly, cynical, and untrustworthy."  (Compl. ¶ 67.)  But Plaintiff cannot claim a "property interest in a stereotyped character[]," such as a "sly" and "untrustworthy" fox.  *Mandeville-Anthony*, 2012 WL 4017785, at *3.  The characters are completely dissimilar.  Nick is a fox; Roscoe is a hyena.  Nick wears clothes (pants, shirt, and tie); Roscoe wears no clothes whatsoever.  And Nick, like Judy and unlike Roscoe, is animated in three dimensions.  Plaintiff does not even suggest any other similarities exist.  Like the characters in *Mandeville-Anthony*, the characters here are not substantially similar because the *Zootopia* character is an entirely different animal species from the two *Looney* characters and wears clothing.

> c. *Defendants' Character Bellwether and Plaintiff's Characters Ms. Quilty and Fuzz*

Plaintiff again relies on an amalgamation of two characters, alleging without more that Bellwether's characteristics are similar to those of Ms. Quilty and Fuzz,

16

and omitting anything about what those latter characteristics are. Absolutely no information is provided about Fuzz, who appears likely to be a human character. Instead, Plaintiff states—without making any actual comparisons to *Looney*—that Bellwether is (i) "unattractive and seemingly prissy, but at the same time vain," (ii) "a little Napoleon who is consumed with unbridled ambition," and (iii) "a prey animal who wants to challenge" others (Compl. ¶ 68,), characteristics too general and vague for copyright protection. *See Gallagher*, 2015 WL 12481504, at *8–9 (holding as unprotected such characteristics as "spoiled rich girl," "bubbly," "strong," and "quirky"). Plaintiff also claims that Bellwether is "visually similar" to Ms. Quilty because both "are passive, meek, and vulnerable prey animals with . . . big eyes and hair piled high on their heads," (Compl. ¶ 68,) but these attributes flow from the fact that Bellwether is a sheep, and Plaintiff cannot claim a monopoly over "stereotyped characters." *Mandeville-Anthony*, 2012 WL 4017785, at *3. Moreover, even on the face of the Complaint, the characters are plainly different. Bellwether is a sheep; Ms. Quilty is an ostrich. Bellwether wears a dress and eyeglasses; Ms. Quilty wears nothing. And like Nick and Judy, Bellwether is animated in three dimensions. These characters are entirely different both in terms of their characteristics and appearance. *See Thomas*, 2008 WL 425647, at *5 (finding no substantial similarities between "orange clownfish with wide eyes and white stripes" and "tiny yellow fish").

### d. *Side Characters*

Plaintiff claims that Bogo is visually and characteristically similar to Griz because both are (i) "big, strong, intimidating, and 'grizzled,'" and (ii) "see themselves as natural leaders." (Compl. ¶ 69(a).) But Bogo is a Cape buffalo with horns on his head whereas Griz is a bear. Bogo is shown wearing a police chief's uniform whereas Griz wears no clothing. Bogo is animated in three dimensions whereas Griz is two-dimensional. The attributes that Plaintiff claims are similar—"big, strong, [and] intimidating"—simply describe the actual appearance of a bear

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

and a Cape buffalo with no protectable element.

Plaintiff claims that another side *Zootopia* character, Yax, is similar to its Max because both are (i) "tall, horned, Asian mountain animals with similar names," and (ii) "the proprietors of a club with a similar name."  (Compl. ¶ 69(b).)  Actually, these characters are factually distinct.  Yax is an ordinary yak; Max is an Asian mountain goat.  Yax has dreadlocks and wears a beaded necklace; Max has neither.  Yax, like Bogo, is animated in three dimensions.  The fact that both are allegedly "tall" and "horned" is immaterial because those traits merely describe the animals' appearances.  That both characters have similarly sounding names is irrelevant; "similar sounding names . . . cannot suffice to find substantial similarity."  *Gallagher*, 2015 WL 12481504, at *8.  And Plaintiff mischaracterizes Yax's role; he is not the "proprietor" of a club, but rather works there as a front-desk employee.

Plaintiff claims that another side character, Gazelle, is similar visually and characteristically to its Cha because both are "Latin female characters, in the bodies of African animals, who are ostensibly attractive and function as performers and sex symbols."[5]  (Compl. ¶ 69(c).)  Yet again, these characters are patently dissimilar.  Gazelle is a gazelle; Cha is a cheetah.  Gazelle is a prey animal; Cha is a predator.  The difference between predator and prey is a critical element in *Zootopia* and Plaintiff entirely ignores this distinction, instead focusing on the erroneous assumption that cheetahs and gazelles must be African animals.  Gazelle wears clothes (dress, high heels, and a top); Cha wear no clothes at all.  And Gazelle is animated in three dimensions.

### 3.    Dialogue and Title

"In order to support a claim of substantial similarity based on dialogue,

---

[5]    Plaintiff's claim that Gazelle is a "sex symbol" is wrong.  She is actually portrayed in *Zootopia* as a popular singer who also provides comic relief.  This is another stretch at imagining similarities where none exist.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

'extended similarity of dialogue' must be demonstrated." *Gallagher*, 2015 WL 12481504, at \*10 (citing *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)). *Zootopia* runs 108 minutes and the soundtrack contains about 20,000 words of dialogue, (*see* Bloom Decl. Ex. A)—yet Plaintiff can point to just one sentence even partly similar to the dialogue in its work and one other sentence that resembles not even dialogue but rather only its character description for Roscoe. (Compl. ¶¶ 60–61.) *See Gallagher*, 2015 WL 12481504, at \*10 (holding that "a mere three sentences taken from a 302-page book compared to three sentences from a 90-minute motion picture falls far short of the 'extended similarity' required for a finding of substantial similarity for dialogue"). Plaintiff's claim also fails because it asserts similarity based on an ordinary phrase: "[h]e has no hope that he can change or improve; or that anyone else can change or improve." (Compl. ¶ 61.) "[O]rdinary words and phrases are not entitled to copyright protection." *Gallagher*, 2015 WL 12481504, at \*10. Two partially similar sentences constituting ordinary phrases do not remotely meet the extended-similarity requirement.

Plaintiff's claim based on Defendants' use of the word "Zootopia" is also unavailing. First, Plaintiff does not even allege a single sentence of dialogue containing the word "Zootopia." Nor has the Plaintiff attached its synopsis and treatment showing how the word is used. In Defendants' animated motion picture, "Zootopia" refers to the name of the city in which different animal species live. This is consistent with how the word has been applied in other real-world contexts. For example, since at least 2012, the name "Zootopia" has been associated with a zoo in Denmark.[6] And it has been used since 1999 as the name of a New York area

---

[6]   Becky Quintal, *BIG Unveils Design For "Zootopia" in Denmark*, THE ARCH DAILY (July 29, 2014), http://www.archdaily.com/532248/big-unveils-design-for-zootopia-in-denmark ("The firm has been working for the past two years to make Zootopia what the Danish press is calling 'the world's most advanced zoo.'").

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

radio station's annual concert series.[7]  Plaintiff's insinuation that it alone created and coined the term is flatly wrong.  Anyway, as Plaintiff readily admits, "[t]itles . . . [are] not independently copyrightable."  (Compl. ¶ 80.)

### 4.    Themes

Stock themes are not protected by copyright law.  *See, e.g.*, *Cavalier*, 297 F.3d at 822 (holding that "stock scenes and themes" must be "filter[ed] out and disregard[ed]"); *Basile*, 2016 WL 5867432, at *8 ("General themes such as human origin and good-versus-evil are 'familiar stock themes' that may not serve as grounds for substantial similarity."); *Rosenfeld*, 2009 WL 212958, at *3 (holding as unprotected such themes as "the importance of believing in oneself and following one's dreams"); *Gallagher*, 2015 WL 12481504, at *13 (holding theme of "horror resulting from real people unknowingly being manipulated by third parties" to be "generic and common themes [that] do not render the two works . . . similar").

Plaintiff alleges substantially similar themes on the basis that both *Looney* and *Zootopia* purportedly address (i) "[w]hether, in a diverse society as represented by different species of 'Zootopia,' one can be anything he or she wants to be . . . [and] whether, in order to do so, one can overcome not only the prejudices inherent in a diverse society . . . but also the prejudices within oneself as a member of such a society," and (ii) "whether the societies can live up to utopian ideals and judge and credit others fairly as individuals not as stereotypes, based on conceptions of merit not natural order."  (Compl. ¶ 54.)  Although both works do in fact address overcoming stereotypes and bias, these generic themes underlie countless stories and are not protected by copyright law.  *See Campbell*, 718 F. Supp. 2d at 1113 ("The Court finds that although the works share themes of self-reliance and the

---

[7]    *Z100 Announces "Zootopia" Lineup*, ALL ACCESS (Apr. 3, 2007), https://www.allaccess.com/net-news/archive/story/23265/z100-announces-zootopia-lineup ("Zootopia was created in 1999 and has been held at various venues in the tri-state area.").

20

importance of friendship and teamwork, these themes often predominate stories of competition . . . and are thus generic and not protectable").  Also, *Zootopia* contains another theme that is not present in *Looney* at all—*i.e.*, "try to make the world a better place."  *See id.* (finding no substantial similarity where defendants' work contained "additional themes . . . absent from" plaintiff's work).

### 5. Settings

Plaintiff claims that the works are substantially similar because they are set in a "cartoon world made up of animated animal characters."  (Compl. ¶ 55.) Specifically, Plaintiff alleges two main settings:  (i) a "modern civilized" urban environment where different animal species live and work, and (ii) a "small town" suburban environment.  (*Id.* ¶¶ 55–56.)  Neither of these is specific enough to warrant protection.  The particular settings that Plaintiff claims are similar are either fabrications or scenes-a-faire that "naturally and necessarily flow[] from the basic plot premise."  *Cavalier*, 297 F.3d at 824.  For example, Plaintiff alleges that the settings in its *Looney* treatment and synopsis are substantially similar to those in *Zootopia* because both "feature human-like physical environments with modern civilized features rather than natural environments such as the wild, a forest, or a jungle."  (Compl. ¶ 56.)  Contrary to Plaintiff's allegation, *Zootopia* depicts both. In *Zootopia*'s Rainforest District environment, for example, rainforest animals live in a natural forest that is modified by modern, civilized features.

Plaintiff further alleges that both *Looney* and *Zootopia* "have the protagonists move back and forth between small towns where they grew up and the big city." (*Id.* ¶ 56.)  Plaintiff fails to allege how the "small town" in *Looney* is similar to Bunnyburrow in *Zootopia*.  Nor can it.  Plaintiff's hero appears to be a human character living in a real-life setting rather than a computer-animated town for bunnies.  Moreover, "small town" and "big city" are generic scenes-a-faire that flow from the shared basic plot of an animated, anthropomorphic animal world. *Cavalier*, 297 F.3d at 824.

Plaintiff also alleges that *Looney* and *Zootopia* are similar because they both "have scenes at clubs with similar names, i.e., the 'Mystic Spring Oasis; and the 'Watering Hole.'" (Compl. ¶ 56.)  But the names of the clubs are completely different and refer to different concepts.  The "oasis" in *Zootopia* refers to a naturalist club where the animals can relax or take a yoga class.  Plaintiff does not allege how the "watering hole" in *Looney* is similar.  *See Campbell*, 718 F. Supp. 2d at 1114–15 (finding no substantial similarity between "desert" setting where defendants' story involved "a town . . . surrounded by a desert landscape" and plaintiff's story involved "the main character . . . literally lost in the desert").

Finally, Plaintiff alleges that *Looney* and *Zootopia* both "have schools where animals are taught biology and ecology . . . [and] institutional workplaces where the heroes work." (Compl. ¶ 56.)  These settings are typical of urban and suburban settings, and therefore flow from the basic unprotected premise of an animated, anthropomorphic animal world.  *See Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (holding that "electrified fences, automated tours, dinosaur nurseries, and uniformed workers . . . are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo").

None of the general or specific settings that Plaintiff alleges to appear in *Zootopia* support a claim of substantial similarity.  Each of the settings in *Zootopia* flows from the basic unprotected theme of animated animals living and working in a modern civilized world.  Moreover, though, the realization of several settings in *Zootopia* is unique.  Defendants conceived and built a vast, detailed world comprising (among other places):  (i) a downtown environment full of high-rise buildings, (ii) a plaza environment at the center of Zootopia, (iii) a transportation hub called Central Station that accommodates train travel for all animals, (iv) a police station that is the command center for the entire police force, (v) a Sahara Square environment that is hot and dry for desert animals, (vi) a Tundratown environment where cold-weather animals live, and (vii) a Little Rodentia

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

environment with pint-sized buildings for small animals.  (*See* Bloom Decl. Ex. A.)
All of these environments are fully developed, animated in three dimensions, and
appear only in *Zootopia*, none of them in *Looney*.

### 6.     Mood and Pace

Plaintiff fails to plead any substantial similarity of mood and pace.  Plaintiff
lists generic similarities such as "humor" and "dark moments" with
"disappointment," "disillusionment" and "sadness."  (Compl. ¶ 77.)  This could
probably describe most movies.  Plaintiff then asserts that the "pace changes with
the mood, sometimes exhibiting frenetic energy while other times slowing down"
for exposition.  (*Id.*)  This too could probably describe many if not most movies
ever made.  These allegations are too general and devoid of specifics to support any
finding of substantial similarity.

### 7.     Selection, Arrangement, and Combination of Elements

Plaintiff complains that *Zootopia* "copies both individual elements, and the
selection, arrangement, and combination of elements" from *Looney*.  (*Id.* ¶ 81.)
However, Plaintiff does not specify what those elements are.  Nor has Plaintiff
attached its work to the Complaint showing similarity of the selection, arrangement,
and combination of any such elements.  Plaintiff's vague and unsupported
allegation cannot sustain this claim.

## V.     PLAINTIFF IS BARRED FROM RECOVERING ATTORNEYS' FEES AND STATUTORY DAMAGES

Section 412 of the Copyright Act bars a plaintiff's right to recover statutory
damages and attorney's fees where the plaintiff failed to register the work prior to
commencement of the infringement.  *See* 17 U.S.C. § 412(2) ("no award of
statutory damages or of attorney's fees . . . shall be made for . . . any infringement
of copyright in an unpublished work commenced before the effective date of its
registration").  In the Ninth Circuit, infringement commences upon the occurrence
of "the first act of infringement in a series of ongoing infringements of the same

1    kind." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir.

2    2008).  Plaintiff alleges that Defendants first began distributing and exhibiting

3    *Zootopia* to the public in the United States on March 4, 2016—11 months before

4    Plaintiff allegedly registered Goldman's work on February 10, 2017.  (Compl. ¶¶

5    34, 45.)  Because Plaintiff failed to register the work prior to commencement of the

6    infringement, it is barred from recovering its attorneys' fees and statutory damages.

7    *Derek Andrew*, 528 F.3d at 699 (holding that "Title 17 U.S.C. § 412(2) leaves no

8    room for discretion").

9    **VI.    PLAINTIFF'S STATE-LAW CLAIMS FAIL AS A MATTER OF**

10   **LAW**

11   Plaintiff asserts three claims under California law:  (i) breach of implied-in-

12   fact contract; (ii) breach of confidence; and (iii) violation of Cal. Bus. & Prof. Code

13   § 17200 (UCL).  (*See* Compl. ¶¶ 90–113.)  To allege a claim for breach of implied-

14   in-fact contract, Plaintiff must demonstrate that the works are substantially similar.

15   *See Benay v. Warner Bros. Entm't*, 607 F.3d 620, 631 (9th Cir. 2010).  "The

16   requirement of substantial similarity for implied-in-fact contract claims aligns this

17   field with copyright infringement and also means that copying less than substantial

18   material is non-actionable."  *Id.*  In the Ninth Circuit and elsewhere, "[c]ourts have

19   specifically rejected the contention that liability could be imposed on defendants on

20   the basis of less than substantial similarities."  *Id.*  The same is true with respect to

21   a claim for breach of confidence.  *See Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903

22   (9th Cir. 1987) ("To prevail on their claim for breach of confidence, appellants

23   must show that . . . there was disclosure or use").[8]

24

25   _____

[8]    Plaintiff bases the Defendants' UCL liability on the same conduct that
26   allegedly supports its other claims.  (*See* Compl. ¶ 111) ("By engaging in the
     conduct alleged above, Defendants have engaged in unlawful, unfair, and/or
27   fraudulent business acts of unfair competition in violation of" the UCL).  To the
     extent that Plaintiff's UCL claim is derivative of its copyright infringement claim, it
28   is preempted by federal copyright law.  *See* 17 U.S.C. § 301 ("no person is entitled

24

1    In *Benay*, the Ninth Circuit affirmed summary judgment for the defendants

2    on the plaintiff's copyright infringement claim, but remanded the plaintiff's breach

3    of implied-in-fact contract claim to the District Court because it determined the two

4    works shared a number of concrete similarities.  607 F.3d at 631–32.  For example,

5    the Court found persuasive the fact that both works:  (i) featured "an embittered

6    American war veteran who travels to Japan where he meets the Emperor, trains the

7    Imperial Army in modern warfare, fights against the samurai, and in the end is

8    spiritually restored," (ii) "rel[ied] heavily on the historical figure Saigo Takamori,"

9    and (iii) "share the same title."  *Id.* at 632.

10    The similarities in this case are nothing like those in *Benay*.  *Looney* and

11    *Zootopia* do not share the same title.  Nor are they based on the same character or

12    story.  *Zootopia* is a fully animated motion picture about a bunny cop and a con-

13    artist fox who partner to solve a missing-animal crime under a 48-hour deadline.

14    Plaintiff's work is a synopsis and treatment for a live-action picture about a human

15    animator and his work to complete an unfinished animation project.  Plaintiff has

16    not alleged any concrete similarities between *Looney* and *Zootopia*.  Because

17    *Zootopia* does not "use" Plaintiff's ideas or materials, Plaintiff cannot sustain its

18    state-law claims.

19    **VII.   CONCLUSION**

20    For the foregoing reasons, this Court should dismiss Plaintiff's Complaint

21    with prejudice.

22

23

24

25

26

27    to any such right or equivalent right in any such work under the common law or the
statutes of any State").

28

25

1   Dated:  May 22, 2017

2                                                    O'MELVENY & MYERS LLP

3

4                                                    By:    /s/ Daniel M. Petrocelli
                                                                    Daniel M. Petrocelli
5

6                                                    Attorneys for Defendants
                                                     The Walt Disney Company, et al.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                     DEFENDANTS' MOT. TO DISMISS
                                                     2:17-CV-02185-MWF-JC