DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
JAMES M. PEARL (S.B. #198481)
  jpearl@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
CRAIG P. BLOOM (S.B. #314406)
  cbloom@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:  +1 310 246 6779

Attorneys for Defendants
The Walt Disney Company, et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESPLANADE PRODUCTIONS, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>      v.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WALT DISNEY PICTURES, a California corporation; ABC, INC., a New York corporation; BUENA VISTA HOME ENTERTAINMENT, INC., a California corporation; DISNEY CONSUMER PRODUCTS, INC., a California corporation; DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA, INC., a California corporation; DISNEY BOOK GROUP, LLC, a Delaware limited liability company; BUENA VISTA BOOKS, INC., a California corporation; DISNEY INTERACTIVE STUDIOS, INC., a California corporation; DISNEY STORE USA, LLC, a Delaware limited liability company; DISNEY SHOPPING, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. 2:17-cv-02185-MWF-JC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Hearing Date:** October 2, 2017<br>**Hearing Time:** 10:00 a.m.<br>**Place:** Courtroom 5A<br>**Judge:** Hon. Michael W. Fitzgerald<br><br>**Action Filing Date:** March 21, 2017 |

1    TO PLAINTIFF ESPLANADE PRODUCTIONS, INC. AND ITS

2  COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on October 2, 2017, at 10:00 a.m., or as soon

4  thereafter as the matter may be heard, in Courtroom 5A of this Court, located at 350

5  West First Street, Los Angeles, California 90012, defendants The Walt Disney

6  Company, Disney Enterprises, Inc., Walt Disney Pictures, ABC, Inc., Buena Vista

7  Home Entertainment, Inc., Disney Consumer Products, Inc., Disney Consumer

8  Products and Interactive Media, Inc., Disney Book Group, LLC, Buena Vista

9  Books, Inc., Disney Interactive Studios, Inc., Disney Store USA, LLC, and Disney

10  Shopping, Inc. (collectively, "Defendants") will and hereby do move pursuant to

11  Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice

12  plaintiff Esplanade Productions, Inc.'s ("Plaintiff") First Amended Complaint on

13  the ground that it fails to state any claim upon which relief can be granted.

14    This Motion is made following the conference of counsel pursuant to Central

15  District Local Rule 7-3, which took place on August 21, 2017.  Declaration of

16  Craig P. Bloom ("Bloom Decl.") ¶ 2.  This Motion is based on the files, records,

17  and proceedings in this action, this Notice, the following Memorandum of Points

18  and Authorities, the concurrently filed Declaration of Craig P. Bloom, the reply

19  memorandum that Defendants intend to file, the arguments of counsel, and such

20  other matters as may be presented at the hearing on this Motion or prior to the

21  Court's decision.

22
23  Dated:  August 28, 2017          O'MELVENY & MYERS LLP

24                      By:    /s/ Daniel M. Petrocelli
                                Daniel M. Petrocelli

25

26                      Attorneys for Defendants
                        The Walt Disney Company, et al.

27

28

i

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND .................................................................................2

II.   PLAINTIFF FAILS TO STATE A COPYRIGHT CLAIM ...........................5

    A.    The Plots And Sequences Are Not Substantially Similar ....................6

    B.    The Themes Are Not Substantially Similar ........................................10

    C.    The Character Designs Are Not Substantially Similar .......................11

    D.    The Character Traits Are Not Substantially Similar...........................15

    E.    The Dialogue And Titles Are Not Substantially Similar....................20

    F.    The Settings Are Not Substantially Similar........................................22

    G.    The Mood And Pace Are Not Substantially Similar ..........................23

    H.    The Combinations Of Elements Are Not Substantially Similar.........23

III.  PLAINTIFF'S DERIVATIVE STATE-LAW CLAIMS ALSO FAIL
AS A MATTER OF LAW AND SHOULD BE DISMISSED......................24

IV.   CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Acri v. Varian Assocs., Inc.*,
  114 F.3d 999 (9th Cir. 1997) ..................................................................... 25

*Alexander v. Murdoch*,
  2011 WL 2802899 (S.D.N.Y. May 27, 2011) ....................................... 14, 19

*Aliotti v. R. Dakin & Co.*,
  831 F.2d 898 (9th Cir. 1987) ..................................................................... 25

*Basile v. Warner Bros. Entm't, Inc.*,
  2016 WL 5867432 (C.D. Cal. Jan. 4, 2016) ......................................... 7, 10

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ................................................................ 10, 24

*Benjamin v. Walt Disney Co.*,
  2007 WL 1655783 (C.D. Cal. June 5, 2007) ......................................... 8, 15

*Bethea v. Burnett*,
  2005 WL 1720631 (C.D. Cal. June 28, 2005) ............................................ 24

*Buggs v. Dreamworks, Inc.*,
  2010 WL 5790251 (C.D. Cal. Dec. 28, 2010) .............................................. 6

*Campbell v. Walt Disney Co.*,
  718 F. Supp. 2d 1108 (N.D. Cal. 2010) ........................................... 7, 10, 11

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .......................................................... 5, 10, 22

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
  697 F. Supp. 1136 (E.D. Cal. 1987) ........................................................... 20

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) .................................................................... 15

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006) ............................................................... 5, 10

*Gable v. NBC*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................................................ 24

*Gallagher v. Lions Gate Entm't Inc.*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................. *passim*

*Kouf v. Walt Disney Pictures*,
  16 F.3d 1042 (9th Cir. 1994) ........................................................................ 6

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Kullberg v. Pure Flix Entm't LLC*,
  2016 WL 7324155 (C.D. Cal. Oct. 12, 2016) ...................................................16

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ...........................................................................6

*Mandeville-Anthony v. Walt Disney Co.*,
  2012 WL 4017785 (C.D. Cal. July 28, 2012) ...........................................*passim*

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002)..........................................................................23

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ................................................................................2

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003)............................................................................5

*Rosenfeld v. Twentieth Century Fox Film*,
  2009 WL 212958 (C.D. Cal. Jan. 28, 2009).................................................7, 9, 10

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) .............................................................................2

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003)............................................................................24

*Schkeiban v. Cameron*,
  2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) ....................................................19

*Shame on You Prods., Inc. v. Banks*,
  120 F. Supp. 3d 1123 (2015).....................................................................*passim*

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010)....................................................16, 17, 18

*Thomas v. Walt Disney Co.*,
  2008 WL 425647 (N.D. Cal. Feb. 14, 2008)...................................................17, 20

*Warner Bros., Inc. v. ABC, Inc.*,
  720 F.2d 231 (2d Cir. 1983) ............................................................................15

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ..............................................................................22

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007).............................................................24

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

17 U.S.C. § 301.................................................................................................25

17 U.S.C. § 505.................................................................................................25

**RULES AND REGULATIONS**

37 C.F.R. § 202.1(a) .........................................................................................21

**OTHER AUTHORITIES**

Nimmer on Copyright...................................................................................5, 25

D. Aronoff, *Exploding the Inverse Ratio Rule*, 56 J. COPYRIGHT SOC'Y
OF THE U.S.A. 125 (2008) ...................................................................................5

1    This Court previously dismissed Plaintiff's initial complaint and concluded
2  that by choosing not to attach the allegedly infringed *Looney* materials, Plaintiff
3  "actively obfuscate[d] the details of the infringement." Doc. 24 ("Order") at 2.  As
4  the Court observed, Plaintiff's failure to attach the *Looney* materials to its initial
5  complaint, or to include any clear summary of them, indicated that doing so "would
6  have been detrimental to its claims." *Id.* at 19.  Now that the *Looney* materials have
7  finally emerged with Plaintiff's amended complaint, the Court's observations are
8  confirmed: the additional descriptions and context provided by those materials
9  show *Looney* and *Zootopia* bear no similarity, let alone the substantial similarity
10 required to state a claim for copyright infringement.  Every finding and holding in
11 the Court's existing prior 20-page opinion and order should be conclusively
12 affirmed.

13    The *Looney* materials describe a raunchy live-action movie about a "looney"
14 animator named Zeke who develops an animated TV show based on people from
15 his childhood and on "warring aspects of his personality," depicted as high school-
16 age animals in a zoo run by humans.  Doc. 27 ("FAC") Ex. 1.  When fame goes to
17 his head, Zeke becomes an egomaniacal tyrant, is kicked off the show, loses his
18 money, fame, and starlet girlfriend, and is committed to an insane asylum, where he
19 struggles to regain his sanity and win the love of his childhood friend.  *Id.*  Neither
20 the central *Looney* plot nor its animated story-within-a-story are remotely similar to
21 *Zootopia*.

22    This conclusion is not obscured by the 143 additional pages of allegations,
23 comparison charts, and tracing studies included in the amended complaint.  Plaintiff
24 still cannot overcome the fundamental deficiencies in its initial complaint or make a
25 "clear, direct comparison" between *Looney* and *Zootopia*.  Order at 19.  Instead,
26 Plaintiff again tries to "deliberate[ly] obfuscat[e]" the relevant facts by openly
27 ignoring the majority of the *Looney* materials, rehashing the same vague, generic
28 comparisons the Court already rejected, and mischaracterizing both works to make

1    them appear similar. *Id.* Such pleading artifices are futile, because "the works

2    themselves supersede and control contrary descriptions." *Peter F. Gaito*

3    *Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *accord*

4    *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).[1] Plaintiff's verbal

5    smokescreen cannot hide the plain truth: the works on their face are different in

6    every material aspect, and no "direct comparisons" can be drawn. The Court

7    should dismiss the amended complaint in its entirety and with prejudice.[2]

8    **I.     BACKGROUND**

9        ***Zootopia.*** In March 2016, Defendants released *Zootopia*, which went on to

10   gross over a billion dollars at box offices worldwide and win an Academy Award.

11   Although the Court is already familiar with the *Zootopia* story and characters, *see*

12   Doc. 12 at 3-5, for the Court's convenience Defendants include a brief summary

13   below to facilitate a side-by-side comparison to *Looney*.

14       *Zootopia* opens in Bunnyburrow, a carrot-farming suburb where Judy Hopps

15   is performing in a play about the evolution of animals. Judy reveals her dream to

16   make the world a better place by becoming a police officer, which she later realizes

17   by moving to Zootopia and becoming its sole rabbit officer. On her first day, Chief

18   Bogo, a buffalo, assigns Judy to parking duty instead of a plum missing-animals

19   case. She is disappointed, but determined to prove herself. FAC Ex. 2 at 00:01-16.

20       During her lunch break, Judy encounters Nick Wilde, a con-artist fox, trying

21   to buy a popsicle at an ice cream shop for elephants. When Nick is refused service,

22   Judy intervenes and pays for the giant popsicle, but later sees him melting it down

23   to make smaller popsicles for resale. Judy has been scammed. *Id.* at 00:18-23.

---

24   [1] Unless otherwise specified, all internal citations and quotations are omitted.

25   [2] Although the amended complaint attaches a "collection" of materials submitted to

26   the U.S. Copyright Office in February 2017—one year after *Zootopia*'s release —it
      fails to disclose which, if any, of these materials were actually shown to Defendants
      in either 2000 or 2009. FAC ¶ 34. Plaintiff's counsel represented during a meet-

27   and-confer that all of the 2017 materials were shown to Defendants, Bloom Decl.
      ¶ 4, but that is not averred on the face of the amended complaint.

28

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1    Back at police headquarters, Judy pushes her way onto the missing-animals

2 case, and Chief Bogo gives her a 48-hour deadline to solve the case or resign.  Judy

3 enlists Nick to help against his will.  The pair find a panther named Manchas who

4 was inexplicably attacked by one of the missing animals, Mr. Otterton, and tells

5 them the animals' disappearance has something to do with "night howlers."  Before

6 he can explain, he turns on them and attacks.  Judy saves Nick and apprehends

7 Manchas, but by the time Chief Bogo arrives, he has disappeared.  *Id.* at 00:30-56.

8    Judy and Nick visit Assistant Mayor Bellwether, a sheep, who gives them

9 surveillance footage showing a pack of wolves taking Manchas to a remote asylum.

10 Judy deduces that the wolves are the "night howlers."  Judy and Nick sneak into the

11 asylum, discover the missing animals, and learn that Mayor Lionheart, a lion, was

12 involved in their abductions.  He is arrested, the missing animals are freed, and

13 Judy becomes a hero.  At a press conference, she observes that the missing animals

14 were all predators, inadvertently suggesting they are naturally inclined to turn

15 savage.  Nick, himself a predator, is offended, and Judy's comments spread fear

16 across Zootopia.  Although Chief Bogo implores her to stay, Judy resigns and

17 returns to Bunnyburrow.  Back home, she learns that the pollen from a flower

18 nicknamed "night howler" can cause animals to act savagely.  She races back to

19 Zootopia, where she and Nick reconcile and team up again.  *Id.* at 01:01-01:21.

20    The pair discover a lab where sheep are using "night howlers" to create a

21 blue serum that turns animals savage.  They learn that Bellwether, who has now

22 become mayor, is the mastermind behind a scheme to gain political power by

23 making the mostly "prey" population fear a minority of predators.  A chase ensues,

24 Nick and Judy manage to escape unharmed, and Bellwether is arrested.  Zootopia

25 begins to heal, with prey and predator working together again.  In the penultimate

26 scene, Judy delivers a speech to Zootopia's new police cadets, including Nick,

27 encouraging them to "try to make the world a better place."  *Id.* at 01:23-01:34.

28

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

*Looney.*  Plaintiff's CEO, Gary Goldman, wrote a synopsis and treatment for a live-action movie entitled *Looney*.  FAC ¶ 33.  He also wrote descriptions of animated characters and hired a cartoonist to draw them.  *Id.* ¶¶ 31-32.  Goldman allegedly showed certain *Looney* materials to Defendants in 2000 and 2009.  *Id.* ¶¶ 36-43.  On February 10, 2017, Plaintiff registered a "collection" of materials with the U.S. Copyright Office.  *Id.* ¶ 34; *id.* Ex. 1.  Plaintiff's amended complaint is unclear as to which of these materials were shown to Defendants—for example, it alleges that one "Synopsis" was given to Defendants, but the 2017 "collection" includes three.  *Id.* ¶ 33; *id.* Ex. 1 at 24-27.  For purposes of this Motion, Defendants assume the representation of Plaintiff's counsel, *supra* n. 1, is true.

*Looney* is about Zeke, a "brilliant but unstable" animator imagined as Jim Carrey.  *Id.* Ex. 1 at 16, 26.  Zeke moves to Los Angeles and develops a hit TV show entitled "Zootopia."  *Id.* at 16-17.  The show, which has "the zaniness and energy level of Looney Tunes," features adolescent animals who live in a zoo and their zookeeper.  *Id.*  The animals represent people from Zeke's childhood and competing aspects of his personality.  The show's success causes Zeke to become an "egomaniac" and "tyrant."  *Id.*  He marries and divorces a series of starlets and models, lives in a giant mansion, and drives a Ferrari.  *Id.*  He belittles his colleagues, blows off his mother's calls, and embarrasses Oog, his childhood bully.  *Id.* at 17-18.  The only person who can stand up to Zeke is Robin, his friend and co-worker.  *Id.* at 18.

Zeke's success comes to an abrupt end after he refuses to endorse a lucrative product and mocks his boss on a talk show.  *Id.* at 19.  Zeke is fired, dragged out of the studio by security, and replaced by another animator.  *Id.*  Without a creative outlet to direct the characters in his head, Zeke becomes haunted by them.  *Id.* at 20-21.  He loses his fame, fortune, and girlfriend, and is arrested for breaking into a neighbor's home.  *Id.*  Zeke, broke and homeless, moves back in with his parents in Topeka, Kansas.  *Id.*  He realizes that his one true love is Robin, but it is too late—

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1   she is engaged to Oog. *Id.* at 22.  Dejected and driven mad by his cartoon creations,

2   Zeke is committed to an insane asylum—a literal "looney bin." *Id.* at 22, 26.

3       Zeke must master and integrate his cartoon creations back into his

4   personality. *Id.*  He succeeds, and returns to the studio to help his replacement

5   finish a special Valentine's Day episode, which he dubs with Robin's voice. *Id.* at

6   22.  In the final scene, Robin leaves Oog at the altar and kisses Zeke. *Id.* at 23.

7   **II.    PLAINTIFF FAILS TO STATE A COPYRIGHT CLAIM.**

8       For purposes of this Motion only, Defendants assume that Plaintiff owns any

9   copyright in the *Looney* materials and that Defendants had access to them before

10  *Zootopia*'s creation.  In order to state a claim for copyright infringement, Plaintiff

11  must demonstrate that *Looney* and *Zootopia* are "substantially similar" in their

12  protected elements.  Order at 6-9 (setting forth applicable legal standards).[3]

13      As with Defendants' initial motion to dismiss, the Court must apply the

14  "extrinsic test" to assess substantial similarity, which requires an objective analysis

15  of the "articulable similarities between the plot, themes, dialogue, mood, setting,

16  pace, characters, and sequence of events." *Funky Films*, 462 F.3d at 1077.  The

17  Court must "inquire only whether the protectable elements, standing alone, are

18  substantially similar," and filter out any non-protectable elements, including

19  "general plot ideas," "stock scenes and themes," and "*scenes-a-faire* … that flow

20  necessarily or naturally from a basic plot premise." *Cavalier v. Random House,*

21  *Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002); *Rice v. Fox Broadcasting Co.*, 330 F.3d

22  1170, 1174-75 (9th Cir. 2003).  As explained below, the amended complaint

23

24  [3] The Court noted that where access is conceded, a plaintiff bears a somewhat lesser burden of showing of substantial similarity.  Order at 8.  This "inverse ratio rule" has had a "checkered application" in the Ninth Circuit and has never been

25  determinative of any decision. *See generally* 4 Nimmer on Copyright § 13.03[D]; D. Aronoff, *Exploding the Inverse Ratio Rule*, 56 J. COPYRIGHT SOC'Y OF THE

26  U.S.A. 125 (2008).  It is well-settled that no matter the degree of access, "the absence of substantial similarity that must underlie every successful claim still

27  dooms the infringement suit." Nimmer, *supra*; *see Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1081 (9th Cir. 2006).

28

5

indisputably confirms the Court's conclusion that Plaintiff cannot establish substantial similarity as a matter of law.

### A. The Plots And Sequences Are Not Substantially Similar

As the Court held, Plaintiff's initial complaint described the animated and live-action plots of *Looney* in general terms and made "strained comparisons" to *Zootopia* that fell far short of demonstrating substantial similarity. Order at 9-13. The amended complaint recycles the same generic plot ideas the Court previously rejected as unprotectable, and the actual *Looney* materials, which the complaint almost entirely ignores, show that Plaintiff's comparisons to *Zootopia* are not merely "strained"—they are absurd.

The 79-page chart of "Similarity in Plot and Events," which relies on cherry-picked descriptions of random elements scattered throughout *Looney* and *Zootopia*, does not help Plaintiff.[4] As the Ninth Circuit has ruled, these charts "are inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984); *see also Kouf v. Walt Disney Pictures*, 16 F.3d 1042, 1045-46 (9th Cir. 1994). What matters is the works themselves, not Plaintiff's self-serving characterizations of them. No amount of creative lawyering can force a square peg into a round hole or make *Looney* anything like *Zootopia*.

**Animated Plot.** The amended complaint repeats almost verbatim the same high-level comparison between *Looney*'s animated story-within-a-story and *Zootopia* that the Court previously rejected. Order at 10; *compare* Doc. 1 ¶ 71 *with* FAC ¶ 118. As the Court held, Plaintiff merely describes "a buddy movie starring talking animals … set in a place called 'Zootopia,'" which is a basic plot idea and not subject to copyright protection. Order at 10; *see Buggs v. Dreamworks, Inc.*,

---

[4] Plaintiff's lengthy charts of "similarities," FAC Exs. 6-7, are duplicative of the allegations in the amended complaint and fail for the same reasons explained herein. The charts, like the amended complaint, mischaracterize the works, ignore the vast differences between them, and—at most—identify generic, high-level similarities that cannot give rise to substantial similarity.

2010 WL 5790251, at *5 (C.D. Cal. Dec. 28, 2010) (plot idea of anthropomorphic pests who are flushed down the drain, have adventures in the sewer, and save their respective communities unprotectable); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1112 (N.D. Cal. 2010) (plot idea of "a cocky young race-car driver ... who learns life lessons from an older mentor" unprotectable); *Basile v. Warner Bros. Entm't, Inc.*, 2016 WL 5867432, at *6 (C.D. Cal. Jan. 4, 2016) (plot idea of "a humble hero with a previously unknown powerful ancestry who learns his true identity and must save his home planet" unprotectable).

The amended complaint also mischaracterizes the *Looney* materials. Those materials do not contain many of the plot ideas Plaintiff describes, and instead reveal an even more generic "[p]remise":  "Backstage at the zoo.  Every morning, the animals punch in and go to work.  At closing time, they punch out and go home. It's a metaphor for life and for America."  FAC Ex. 1 at 17.  The *Looney* materials elsewhere describe the animals' basic characteristics, *id.* at 1-6, but do not articulate any actual plot—let alone one that is concrete and "specific enough to be protectable."  Order at 10.

The *Looney* materials also expose the many and substantial differences from *Zootopia*.  *Looney* takes place in a zoo created and controlled by humans, while *Zootopia* is premised on a fictional world of anthropomorphic animals where humans never existed.  *See Rosenfeld v. Twentieth Century Fox Film*, 2009 WL 212958, at *2 (C.D. Cal. Jan. 28, 2009) (distinguishing plots where defendants' work, unlike plaintiff's, "has no human characters at all").  The animals in *Looney* are "high school kids," FAC Ex. 1 at 1, whereas *Zootopia* primarily involves adult animals working in the big city.  *Looney* contains none of the concrete plot elements in *Zootopia*—there is no bunny cop who partners with a con-artist fox to solve a missing-animal crime, and there is no sheep who seizes political control by tricking prey animals into believing all predator animals are "savage."

The *Looney* materials also refute the generic comparisons in Paragraph 118

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1    of the amended complaint.  For example, Plaintiff alleges that in both works, "a

2    small prey animal" seeks to "upend the power structure, but the scheme goes too far

3    and fails."  *Id.* ¶ 118.  In *Looney*, Fuzz the koala wants to replace Griz as "Big Man

4    in the Zoo" and "get ChaCha the sexy Cheetah."  *Id.* Ex. 1 at 1, 2.  He "irritat[es]"

5    and "challeng[es]" Griz,  but "always manages [to] get[] away unharmed."  *Id.* at 6.

6    In *Zootopia*, Bellwether the sheep concocts an elaborate scheme to seize political

7    control from predator animals on behalf of the prey population, but is caught and

8    arrested.  These story arcs are nothing alike.

9         No better is Plaintiff's effort to conflate the stock character descriptions in

10   *Looney* with the sequence of events in *Zootopia* where Nick tricks Judy into buying

11   a giant popsicle that he melts into smaller ones.  *Id.* ¶¶ 119-24.  *Looney* does not

12   contain a remotely similar sequence.  The random elements that Plaintiff selectively

13   plucks from the *Looney* materials—*e.g.*, Roscoe is an outcast who "likes to pull

14   pranks" and Hugo believes that "If you want to be an elephant, you can be an

15   elephant," *id.*—are stock and unprotected, as the Court has already held.

16        **Live-Action Plot.**  Again, the amended complaint describes *Looney*'s live-

17   action plot using the same stock elements the Court already rejected as generic and

18   "too vague to support a claim of substantial similarity."  Order at 11; *compare* Doc.

19   1 ¶¶ 72-75 *with* FAC ¶ 125; *see also Benjamin v. Walt Disney Co.*, 2007 WL

20   1655783, at *6 (C.D. Cal. June 5, 2007) (concept of "females that have escaped

21   their humble past to pursue their dreams of working and living in the big city"

22   unprotectable).  The amended complaint includes more detail about the elements,

23   but these details only confirm that Plaintiff's comparisons are inapt—for example,

24   Zeke grows up in Topeka and aspires to become an animator in Hollywood, while

25   Judy is from Bunnyburrow (a fictional carrot-farming town for bunnies) and hopes

26   to become the first rabbit officer in Zootopia.

27        A review of the *Looney* materials only highlights the absurdity of Plaintiff's

28   comparisons.  Plaintiff asserts that both protagonists "go to an asylum to solve the

8

problem of the out-of-control Zootopian characters." FAC ¶ 125(o).  In *Looney*, Zeke becomes haunted by his "adolescent nightmare" and "harassed by his characters," is committed to an insane asylum, and must "figure[] out who he really is" to escape.  *Id.* Ex. 1 at 25-26.  In *Zootopia*, Judy and Nick discover the missing animals hidden in a remote asylum and rescue them.

Plaintiff claims both protagonists are forced to give up their dream job and leave important projects unfinished.  *Id.* ¶ 125(m).  As the Court noted, this mischaracterizes *Zootopia*; Judy "voluntarily resigns at the height of her success" and, "so far as she knows, she has solved the mystery of why animals go savage." Order at 12.  Zeke, in contrast, is fired and dragged off the set of his TV show. FAC Ex. 1 at 19.

The protagonists also "express[] love" for their partners in very different ways.  *Id.* ¶ 125(w).  In *Looney*, Zeke confesses his love for Robin and they "kiss and get together."  *Id.* Ex. 1 at 22-23.  In *Zootopia*, Judy and Nick have a platonic, professional relationship.  Plaintiff's claim that Judy's affirmation she loves Nick as a friend ("Yes, I do.") "evokes wedding vows," *id.* ¶ 125(w), is ridiculous.

Ultimately, there is no comparison between the works' plots.  *Zootopia* does not contain any live-action portion or human character.  *See Rosenfeld*, 2009 WL 212958, at *2 (distinguishing animated and live-action plots).  That dispositive difference aside, *Looney*'s live-action story in no way resembles *Zootopia*'s story. *Looney* does not depict a human protagonist who "fights his way onto the police force, only to uncover an apparent scheme by the Mayor to cover up wrongdoing by persons of his social group."  Order at 13.  *Looney* depicts the rise and fall of a human animator struggling with sanity and love.  Unlike *Zootopia*, *Looney* includes raunchy jokes, sexual and romantic relationships, and profanity.[5]  The fundamental

---

[5] *See, e.g.*, FAC Ex. 1 at 16 (opening sequence where Zeke "does a cartoon routine of adoring and molesting" a blindfolded Pamela Anderson), *id.* ("Don't you ever get enough?"  "Of you, no."), 18 ("Don't tell me you're still hot for her…?"), *id.*

differences between these works definitively preclude any finding of substantial similarity. *See Funky Films*, 462 F.3d at 1078 (no infringement where "an actual reading of the two works reveals greater, more significant differences and few real similarities"); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 626 (9th Cir. 2010) (no infringement where "many more differences than similarities").

### B.    The Themes Are Not Substantially Similar

The amended complaint largely repeats the same stock themes the Court held were not "specific enough to be protectable." Order at 10; *compare* Doc. 1 ¶ 54 *with* FAC ¶ 102(i)-(v) (whether one can "become anything," "change," "overcome … prejudices," "live up to utopian ideals," and "balance between utopian and deterministic views"). The new themes Plaintiff identifies—*i.e.*, whether characters "can achieve success while upholding moral and ethical behavior," "what makes an individual deserving of being loved," and whether society functions "according to primitive and natural behaviors," FAC ¶ 102(vi)-(ix)—likewise fail. "Stock themes" like these are not subject to copyright protection. *Cavalier*, 297 F.3d at 822; *see Basile*, 2016 WL 5867432, at *8 ("human origin and good-versus-evil"); *Rosenfeld*, 2009 WL 212958, at *3 ("the importance of believing in oneself and following one's dreams"); *Campbell*, 718 F. Supp. 2d at 1113 ("themes of self-reliance and the importance of friendship and teamwork").

Moreover, many of these themes are not actually reflected in the *Looney* materials. It is telling that Plaintiff's conclusory allegations contain no detail or supporting citations to its work. For example, the *Looney* materials do not reference the evolution of animals from a "primitive" to a "civilized" state. *Cf.*

---

("[Leon]'s a bigger asshole than Zeke"), 19 ("I'm not gonna endorse that crap."), 20 (Zeke pitches a "serious action blood-fest"), 22 (Zeke "is about to score with April"), 23 ("Zeke and Robin kiss and get together"). The animated portion of *Looney* is rife with similar examples. *See, e.g., id.* at 2 (Roscoe "has a volcanic libido" and "harass[es] and gross[es]-out females"), 5 (Mimi is "romantic," "sexy," and "likes all of these guys"), 6 (Cha is a "sex goddess cheerleader").

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

FAC ¶ 102.  Nor do those materials address "prejudice" and "stereotypes" or explore whether "a diverse society can live up to utopian ideals," *id.*—they describe nothing more than teenage animals competing for popularity and love.  The only arguable theme in *Looney* is whether the flawed characters are deserving of romantic love.  *See id.* Ex. 1 at 3 ("Will he ever actually be loved …?  Ah, that is the eternal question in these cartoons.").  *Zootopia* has nothing to do with romantic love.  And *Zootopia* contains key themes—*e.g.*, "try to make the world a better place" and "never give up," *id.* Ex. 8 at 107, 109—absent from *Looney*.  *See Campbell*, 718 F. Supp. 2d at 1113 (no infringement where themes differ).

## C.    The Character Designs Are Not Substantially Similar

The amended complaint attaches the same character designs that the Court already reviewed and concluded were dissimilar.  As the Court explained, the "differences between the character designs outnumber the similarities," and any similarities "boil down to the fact that both ensembles consist of anthropomorphic animals whose attributes flow to some extent from their physical form."  Order at 15.  Although the amended complaint unnecessarily devotes several additional pages to describing the character designs, at no point does Plaintiff introduce any new information that contradicts what we can see with our own eyes.

Plaintiff merely lists generic anatomical features that flow from the common premise of anthropomorphic animals—*e.g.*, the characters have (i) comparatively large heads, (ii) dexterous limbs and joints, (iii) flexible torsos and spines, (iv) human-like facial features, like cheeks and eyelashes, and expressions, like smiles and scowls, and (v) two feet planted flat on the ground.  FAC ¶¶ 63-71.  Such stock, generic features cannot give rise to substantial similarity.  *See* Order at 15; *Mandeville-Anthony v. Walt Disney Co.*, 2012 WL 4017785, at *3 (C.D. Cal. July 28, 2012) (no substantial similarity where "car characters share attributes that flow from their make and country of origin").  And nothing changes the Court's conclusion that "the animation style itself is very different between the two sets of

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

characters: whereas the Disney characters are typically cute and appealing, the *Looney* characters evoke a darker, seedier aesthetic." Order at 15.

Plaintiff also attaches "tracing studies," which purport to show "common[] expressive inflection points" between Plaintiff's artwork and images of *Zootopia* characters selectively plucked from the motion picture and publicity materials, but these do not help Plaintiff. FAC ¶ 72. These "studies" are transparently improper and unsubstantiated "expert" materials,[6] which "courts routinely disregard ... in conducting the extrinsic test." *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1147 (C.D. Cal. 2015). They are also irrelevant and misleading. Among other reasons, they compare different facial features and body parts; for example, one study compares the shape of Ms. Quilty's eye line to Bellwether's oversized glasses, another compares Fuzz's body posture to Finnick's loose clothing, and another compares Roscoe's nose to Nick's mouth. FAC Ex. 5 at 2, 6, 10. In several instances, the *Zootopia* character images are rotated and manipulated to create the appearance of similarity. *Id.* at 1-2, 9-10. At most, the tracings identify generic, high-level similarities based on common human expressions that are unprotectable.

In order to facilitate a side-by-side comparison by the Court, Defendants briefly address below each of Plaintiff's pairings (*Id.* ¶¶ 63-71):

**_Zootopia_'s Judy v. _Looney_'s Mimi.** Judy is a rabbit; Mimi is a squirrel. Judy wears a police officer's uniform; Mimi wears no clothing. Judy does not have a prominent tail; Mimi's bushy tail, which Plaintiff describes as "very expressive— and kind of sexy," *id.* Ex. 1 at 5, is a prominent feature. Their shared anatomical features—*e.g.*, "muzzles with 'cute,' small rounded noses," "slight, blunted snouts," and "smallish closed mouth[s]," *id.* ¶ 64(b)—are unprotectable.

---

[6] During the parties' meet-and-confer discussion, Plaintiff's counsel refused to identify how these materials were created or by whom. Bloom Decl. ¶ 5.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

**_Zootopia_'s Nick v. _Looney_'s Roscoe.**  Nick, a fox, wears smart clothing (pants, shirt, and tie); Roscoe, a hyena, wears none.[7]  As the Court noted, Nick "sports smooth fur, a straight back, and a full bushy tail," whereas Roscoe "slouches sheepishly, emphasizing his protruding, paunchy belly and disheveled fur ... [and has a] scrawny, rather stunted tail."  Order at 15; _see also_ FAC Ex. 1 at 2 (Roscoe "has bad posture" and is "ugly").  Despite Plaintiff's contrary allegation, FAC ¶ 63, its tracing studies make clear that Nick, unlike Roscoe, has whiskers.  _Id._ Ex. 5 at 2.  Plaintiff alleges that both characters "evoke a sly, wise-guy, conniving" impression, _id._ ¶ 63(a), but the depiction of "traditional trickster animals [as] sly" is not protectable.  Order at 15; _see also Mandeville-Anthony_, 2012 WL 4017785, at *3 (plaintiff cannot claim a "property interest in stereotyped characters").

**_Zootopia_'s Bellwether v. _Looney_'s Ms. Quilty.**  Bellwether is a sheep; Ms. Quilty is an ostrich.  Bellwether wears a dress and eyeglasses; Ms. Quilty wears nothing.  Bellwether is cute and small; Ms. Quilty is "[un]attractive [and] large." FAC Ex. 1 at 6.  The characters' few similarities—_e.g._, both appear "passive" and have black and white tones and hair on their heads, _id._ ¶ 71—are _scenes-a-faire_.

**_Zootopia_'s Flash v. _Looney_'s Monty.**  Although both characters are sloths, the similarities end there.  Flash is dressed as an office worker (with tie, slacks, and coffee mug); Monty wears no clothing.  Plaintiff's assertion that the characters have "similar head shapes" is not only irrelevant, but wrong—Flash's head is circular and Monty's is oval, and the characters' hairstyles, eyes, noses, and mouths are very different.  _Id._ ¶ 65.  The common features—_e.g._, "sleepy eyes" and "slumped posture," _id._—are based on a sloth's physical attributes and are not protectable.

---

[7] Plaintiff's citation to a screenshot from a _Zootopia_ trailer showing Nick without clothing, FAC ¶ 53, is highly deceptive.  The trailer states that animals in _Zootopia_ "do _not_ go to work nude," and the very next shot shows Nick wearing clothing. https://www.youtube.com/watch?v=g9lmhBYB11U (00:00:28).

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

1   ***Zootopia*'s Finnick v. *Looney*'s Fuzz.**  Finnick is a fennec fox who wears a

2   track suit and sunglasses and has a prominent tail; Fuzz is a koala bear who has no

3   clothes, accessories, or visible tail.  Finnick's "scowl" and "large long ears," *id.*

4   ¶ 66, are consistent with a fennec fox's actual appearance and are unprotectable.

5   ***Zootopia*'s Bogo v. *Looney*'s Griz.**  Bogo is a water buffalo with horns; Griz

6   is a grizzly bear.  Bogo wears a police chief's uniform; Griz wears nothing.  Their

7   common features—*e.g.*, a "snarl," "'tough guy' body language," and "broad,

8   muscular shoulders and arms"—are generic and flow from the basic, unprotectable

9   idea that "large animals are strong."  Order at 15.

10   ***Zootopia*'s Yax v. *Looney*'s Max.**  Yax is a yak; Max is an ibex.  Yax has

11   dreadlocks and a necklace; Max has neither.  And Max, unlike Yax, is depicted as

12   "sporty."  FAC Ex. 1 at 6.  The fact that both have "hooves," "long muzzles," and

13   "tails," *id.* ¶ 69, is immaterial, as those traits are inherent to the animals.

14   ***Zootopia*'s Gazelle v. *Looney*'s Cha.**  Gazelle is a gazelle with horns; Cha is

15   a cheetah.  Gazelle wears a costume (high heels, skirt, and top); Cha does not.  And

16   Gazelle is a prey animal whereas Cha is a predator—an important distinction in the

17   *Zootopia* storyline.  Plaintiff alleges that both characters strike "alluring" poses,

18   wear eye makeup, and have long fingernails and "figure-eight" bodies, *id.* ¶ 68, but

19   these are stock traits flowing from the fact that both characters are female

20   performers.  *See Shame on You*, 120 F. Supp. 3d at 1164 ("32-year-old female who

21   is pretty and likeable"); *Alexander v. Murdoch*, 2011 WL 2802899, *10 (S.D.N.Y.

22   May 27, 2011) ("stunningly beautiful, fiery, temperamental, Latina mother").

23   ***Zootopia*'s Dharma v. *Looney*'s Hugo.**  Dharma is a female armadillo;

24   Hugo is a male aardvark.[8]  Dharma wears a skirt, sweater, and glasses; Hugo wears

25   no clothes.  Dharma slouches and appears older; Hugo puffs out his "muscle-

26

27   _____

     [8] Plaintiff alleges that Hugo is an armadillo, but *Looney*—which supersedes the
     complaint—confirms that he is an aardvark.  FAC Ex. 1 at 1, 3.

28

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

bound" chest and appears young. FAC Ex. 1 at 3. Dharma has a prominent shell; Hugo has none. The characters' "contoured heads, muzzles, and snouts," *id.* ¶ 70, derive from their respective species.

### D. The Character Traits Are Not Substantially Similar

The allegations in Plaintiff's initial complaint were "too general" to permit a comparison between the works' characters. Order at 16. Although the amended complaint attaches the *Looney* character descriptions and a 54-page chart of "Character Similarities," it still fails to demonstrate substantial similarity. As the Court explained, in order to qualify for copyright protection, characters must (1) have "physical as well as conceptual qualities," (2) be "sufficiently delineated," and (3) be "especially distinctive." Order at 16 (quoting *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015)). Few characters have satisfied that exacting test, *id.*, and the characters in *Looney* do not come close. The generic character descriptions in the amended complaint are, like those in the initial complaint, not detailed or distinctive enough to warrant protection. *Cf. id.* And even if they were, the *Looney* materials reveal stark, fundamental differences between each of Plaintiff's character comparisons that preclude any finding of substantial similarity. *See Warner Bros. Inc. v. Am. Broad. Co.*, 720 F.2d 231, 242 (2d Cir. 1983) (there can be no infringement where a character's "appearance, behavior, or traits … significantly differ from those of a copyrighted character").

**Judy v. Mimi and Hugo.** The amended complaint lists common characteristics—*e.g.*, "outsider," "underestimated," "brave, energetic, and enthusiastic," "good natured," and "kindhearted," FAC ¶ 82; *id.* Ex. 6 at 1-17— that, like those in the initial complaint, are "too general" to be protectable. Order at 16; *see Benjamin*, 2007 WL 1655783, at *6 ("attractive, likable, 30-year-old females that have escaped their humble past to pursue their dreams of working and living in the big city"); *Shame on You*, 120 F. Supp. 3d at 1164-65 ("good girl" and "nice guy"); *Gallagher v. Lions Gate Entm't Inc.*, 2015 WL 12481504, at *8 (C.D.

15

Cal. Sept. 11, 2015) ("bubbly"); *Kullberg v. Pure Flix Entm't LLC*, 2016 WL 7324155, at *2 (C.D. Cal. Oct. 12, 2016) ("kind," "loyal," and "courageous").

The initial complaint failed to explain "who [Mimi and Hugo] are, or what role they play." Order at 16. Now that the *Looney* materials have finally surfaced, it is evident why the initial complaint resorted to such generalizations. We now know that Mimi and Hugo are a teenage squirrel and aardvark who play supporting roles in *Looney* and are not at all similar to Judy, the heroine in *Zootopia*. FAC Ex. 1 at 1, 3, 5. And of course, there is no case finding substantial similarity based on a composite of traits drawn from multiple characters, which would contradict settled case law setting a "high" bar for character infringement. *Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010).

Mimi, the only animal in *Looney* who lives outside the zoo's confines, "knows the real world" and "human beings." FAC Ex. 1 at 5. She is "sexy," "romantic," and attracted to "all of the[] guys" in the zoo. *Id.* Judy, who comes from a small carrot-farming suburb, does not know the "real world" or "human beings," and has no romantic or sexual interests. Nor is Hugo anything like Judy. He is described as a "dorky guy" and "bore" who wants "June as [his] girlfriend." *Id.* Ex. 1 at 3. Judy is popular, well-liked, and has no romantic aspirations.

Plaintiff also invents characteristics that are not actually in the *Looney* materials. For example, Plaintiff claims that Mimi is a "victim of prejudice." *Id.* ¶ 82. *Looney* notes that other animals do not understand Mimi because she lives in the "real world," but there is nothing in her half-page character description (which the amended complaint notably fails to cite) that mentions prejudice, let alone describes any form of bias or discrimination because she is a squirrel or lives outside the zoo. Likewise, there is no hint that she is "unappreciated," *id.*—to the contrary, other animals "treasure her as a friend, just not as a lover." *Id.* Ex. 1 at 5.

**Nick v. Roscoe and Monty.**  Plaintiff alleges that Nick is substantially similar to an amalgamation of Roscoe the koala and Monty the sloth, admitting he is not comparable to any one character standing alone.  The amended complaint again compares common characteristics—*e.g.*, "sly," "outcast," "pessimistic and negative," "bad attitude," "agile," and "cynical," *id.* ¶¶ 83-86; *id.* Ex. 6 at 18-34— that are stock and unprotectable.  *See Thomas v. Walt Disney Co.*, 2008 WL 425647, at *5 (N.D. Cal. Feb. 14, 2008) ("inquisitive" and "curious" character); *Sheldon*, 748 F. Supp. 2d at 207-09 ("troubled and depressed teenager").  And many of these traits flow from the characters' respective species.  *See* Order at 15 ("sly" fox unprotectable).

Again, the *Looney* materials expose radical differences between these characters.  For example, Nick is a sophisticated con artist who schemes to earn a living; Roscoe is a juvenile "prankster" who would rather "cause trouble" than work.  FAC Ex. 1 at 2.  Nick is smooth and polished; Roscoe, is "ugly," "uncouth," and others "would be embarrassed to be seen with him."  *Id.* at 2-3.  Nick, unlike Roscoe, does not "harass[] and gross[]-out females" or have "a volcanic libido."  *Id.* at 2.  And Nick, unlike Monty, is not "lazy" or a "highly educated and cultured epicure."  *Id.* at 4.  Plaintiff continues to mischaracterize the *Looney* materials when, for example, it states that Roscoe "is an outcast because of his reviled species," FAC ¶ 86—if anything, he appears to be ostracized because of his unkempt appearance, low-class status, and offensive behavior.  *Id.* Ex. 1 at 2-3.

**Bellwether v. Ms. Quilty and Fuzz.**  Plaintiff relies on an amalgamation of characters with different genders and traits.  The common characteristics Plaintiff cites—*e.g.*, "vain," "unappreciated," and "a little Napoleon," FAC ¶ 87(a); *id.* Ex. 6 at 35-41, 53-54—are generic and stock.  *See Gallagher*, 2015 WL 12481504, at *8-9 ("spoiled rich girl," "bubbly," "strong," and "quirky").  And these characters are plainly dissimilar.  Bellwether, the villain in *Zootopia*, seeks to wrest political control by making the predator animals appear "savage" and installing herself as

17

mayor.  Fuzz, an adolescent koala who sometimes appears as a "Proboscis Monkey with a phallic nose," hopes to become popular and "get ChaCha the sexy Cheetah," and is a "hero" rather than a villain.  FAC Ex. 1 at 1-2.  Ms. Quilty is a biology and ecology teacher who complains about her "miserable" marriage.  *Id.* at 6.

Again, Plaintiff grossly mischaracterizes the *Looney* materials in an effort to manufacture similarities where none exist.  For example, Plaintiff alleges that Bellwether and Ms. Quilty both "use[] biology" in their schemes to upend the power structure.  FAC ¶ 87(a).  As noted above, Ms. Quilty is a biology teacher. She does not, like Bellwether, mastermind a new form of biological warfare as part of a scheme to obtain political control.  Indeed, Ms. Quilty has no involvement whatsoever with the high-school animals' competition for popularity and girls.

**Bogo v. Griz.**  Plaintiff alleges that Bogo and Griz (who is inconsistently referred to as "Cody" in the *Looney* materials) are both "big, strong, intimidating, [] grizzled" and "natural leaders," *id.* ¶ 87(b), but these are stock characteristics and flow from the fact that both are authority figures within their respective groups (Bogo is the chief of police; Griz is the "big man on campus").  *See Shame on You*, 120 F. Supp. 3d at 1167 ("a loud-mouthed best friend in a comedy film is a stock character").  Moreover, these characters are very different.  Bogo is a professional adult and has no romantic relationship; Griz is an adolescent football player and "Prom King" who dates a "[g]orgeous sex goddess cheerleader."  FAC Ex. 1 at 6, 17.  And Griz, unlike Bogo, "massacr[es]" and "clobber[s]" the other animals.  *Id.*

**Yax v. Max.**  Plaintiff's comparison, recycled from its initial complaint, should again be rejected.  It is irrelevant that these characters have vaguely similar names and jobs; neither fact gives rise to copyright protection.  *Gallagher*, 2015 WL 12481504, at *8 ("similar sounding names" do not create substantial similarity); *Sheldon*, 748 F. Supp. 2d at 209 ("basic character type," such as an "assistant," unprotectable).  Moreover, Yax is not the "proprietor" of The Mystic Springs Oasis, FAC ¶ 87(c), but works there as a front-desk employee.

18

**Gazelle v. Cha.**  Plaintiff claims that Gazelle and Cha are both "Latin female characters, in the bodies of African animals, who are ostensibly attractive and function as performers and sex symbols." *Id.* ¶ 87(d).  These characteristics are stock and unprotected. *See Alexander*, 2011 WL 2802899, at *10 ("Latin mother" who is "stunningly beautiful, fiery, [and] temperamental" is a stock character). Plaintiff also mischaracterizes Gazelle, who is portrayed in *Zootopia* as a socially conscious pop star.  In contrast, Cha is a high-school "Prom Queen" and "sex goddess cheerleader" who dates "Cody the Bear" and "tries to make [him] jealous" by flirting with other animals.  FAC Ex. 1 at 6, 17.

**Flash v. Monty.**  Plaintiff's assertion that Flash and Monty both "put great store in appearances," *id.* ¶ 87(e), is not only irrelevant—this is hardly a distinctive character trait—but wrong.  The *Zootopia* guide Plaintiff quotes makes clear that Flash takes a long time to dress not because he is fashionable, but because he is slow.  *See id.* Ex. 10 at 47 ("It take Flash an hour to tie his tie").  And these characters are plainly different.  Flash, a clerk at the Department of Mammal Vehicles, is friendly and helpful to Nick and Judy.  Monty is a "highly educated and cultured epicure" who "can be bought off," is "incredibly pessimistic and negative," and "deflate[s]" and "sabotages" the other animals.  *Id.* Ex. 1 at 4.

**Gideon v. Oog.**  Plaintiff compares Gideon (a fox in *Zootopia*) and Oog (a human in *Looney*) because both are "big, strong, mean bullies as youths, who become kind and decent as adults."  *Id.* ¶ 87(f).  These shared similarities are generic, and it is plain from the face of the Complaint that the characters are depicted very differently.  *See Schkeiban v. Cameron*, 2012 WL 5636281, at *1-2 (C.D. Cal. Oct. 4, 2012) ("bullied teenager" stock character).  The *Looney* materials reveal even more differences.  Oog is the romantic foil who competes with Zeke for Robin's love, while Gideon is a minor side character in *Zootopia*.  Plaintiff's claim that Oog teaches Zeke to "overcome … biases," FAC ¶ 78(f), is false—nothing in *Looney* suggests that Zeke is biased (against "'average' looking women" and

19

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

unsuccessful people, *id.* ¶ 116, or otherwise) or that he overcomes those biases.

**Animal Ensemble.**  Plaintiff asserts that the ensembles in *Looney* and *Zootopia* both represent "a diverse ethnic and cultural society … with a multi-tiered class and power structure."  *Id.* ¶ 88.  No one can claim a legal monopoly on "a 'melting pot' representative of America."  *Id.*  The use of "diverse" animals with different traits flows from the works' shared premise of anthropomorphizing animals and is not protectable.  *See Thomas*, 2008 WL 425647, at *5 ("the fact that both [characters] are talking fish directly flows from the idea of a young fish discovering the ocean"); *Mandeville-Anthony*, 2012 WL 4017785, at *3 (concept of animated, anthropomorphic cars not copyrightable);  *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1144 (E.D. Cal. 1987) ("common idea of an anthropomorphic raisin" unprotectable).  Even if the concept of a diverse animal ensemble were copyrightable—and it plainly is not—the many differences between the animals' appearances and traits precludes any finding of substantial similarity.

### E.  The Dialogue And Titles Are Not Substantially Similar

As the Court found, the initial complaint failed to show substantial similarity of dialogue because it did not demonstrate "extended similarity" or distinctive dialogue beyond "ordinary, common expressions."  Order at 16-17.  The same is true of the amended complaint.  Plaintiff compares three short lines from the *Looney* character descriptions—the first two of which were also in the initial complaint—to *dialogue* in *Zootopia* expressing a similar sentiment:

1.  "'If you want to be an elephant, you can be an elephant.'"  FAC Ex. 1 at 3; *compare with* FAC ¶ 96 ("You want to be an elephant when you grow up, you be an elephant.") ("[H]e loves all things elephant.  Wants to be one….").

2.  "He has no hope that he can change or improve; or that anyone else can change or improve."  FAC Ex. 1 at 4; *compare with* FAC ¶ 98 ("Everyone comes to Zootopia thinking they can be anything they want.  Well, you can't.  You can only be what you are.") ("[T]here's no point in trying to be anything else.").

3.  "[A]n animal can be whatever he wants to be."  FAC Ex. 1 at 3; *compare with* FAC ¶ 97 ("[T]his is Zootopia, anyone can be anything.") ("Our ancestors [...] declared that anyone can be anything.") ("[I]n Zootopia, anyone can be anything.").

There is no "extended similarity"—*Zootopia* runs 108 minutes and contains about 20,000 words of dialogue, FAC Ex. 8, yet Plaintiff can only identify a few scattered lines (two of which are not even dialogue) that are supposedly similar. That is not sufficient.  *See* Order at 17; *Gallagher*, 2015 WL 12481504, at *10 (holding that "[a] mere three sentences taken from a 302-page book compared to three sentences from a 90-minute motion picture falls far short of the 'extended similarity' required").  Nor is this dialogue distinctive.  As the Court already held, the concepts expressed in these lines—that an animal can be whatever it wants to be, and that an animal never changes—are "ordinary, common" sentiments that cannot give rise to infringement.  *Id.*

The Court also confirmed that Defendants' use of the word "Zootopia" "is insufficient to rescue the Complaint from its many other deficiencies."  Order at 18. It is well-settled that titles, names, and words are not copyrightable.  37 C.F.R. § 202.1(a) (excluding "[w]ords and short phrases such as names, titles, and slogans" from copyright protection).[9]  Moreover, we now know that the two works use the word "Zootopia" in very different ways.  In *Looney*, "Zootopia" is never used in dialogue, and appears only two times in all of the *Looney* materials—once on the cover page and once in the treatment to identify the name of Zeke's TV show.  FAC Ex. 1 at 17.  In Defendants' work, "Zootopia" refers to the name of a fictional city in which anthropomorphic animals of different species live and work—and, as explained above, is very different from the TV show in *Looney*.

---

[9] Plaintiff's insinuation that it alone created and coined the term "Zootopia" is also wrong.  *See* Doc. 12 at 19 n.6.

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

### F.    The Settings Are Not Substantially Similar

Plaintiff's amended complaint simply copies or paraphrases the setting comparisons this Court previously analyzed and rejected.  *Compare* Doc. 1 ¶¶ 55-56 *with* FAC ¶¶ 106-07.  As the Court held, *Zootopia* takes place "in an entirely fictional, computer-animated city … that is divided into several temperature-controlled, unique zones to accommodate the anthropomorphic animals who live there" and *Looney* does not.  Order at 17; *see Gallagher*, 2015 WL 12481504, at *10 ("the setting for half of *Cabin*'s scenes and an integral aspect of the plot [is not] merely a minor difference").  The *Looney* materials attached to the amended complaint simply confirm the animated portion takes place in a zoo and the live-action part takes place in Los Angeles and Topeka.  FAC Ex. 1 at 16, 17, 21.

The animated settings described in the amended complaint, all of which were in the initial complaint, are generic and flow from the basic plot premise of a world of anthropomorphic animals.  *See Cavalier*, 297 F.3d at 824.  Moreover, many of these settings are not apparent in *Looney*—for example, there is no indication that the zoo animals in *Looney* occupy "human-like physical environments," such as apartments and workplaces, FAC ¶ 106, or live in discrete "neighborhood[s]" in a place called "Zootopia," as do the characters in *Zootopia*.  Plaintiff also overlooks key differences between these settings.  For example, the "Watering Hole" in *Looney* is a bar, *id.* Ex. 1 at 6, whereas the "Mystic Spring Oasis" in *Zootopia* is a naturalist club where animals have spa treatments and take yoga classes.

Nor are there any similarities between the live-action portion of *Looney* and *Zootopia*.  As in the initial complaint, Plaintiff claims that both works depict a: (i) small hometown, (ii) educational institution, (iii) big city, (iv) institutional workplace, (v) "private male-only room," (vi) media venue, and (vii) asylum.  *Compare* Doc. 1 ¶ 56 *with* FAC ¶ 107.  These, too, are generic *scenes-a-faire*.  *See Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("electrified fences, automated tours, dinosaur nurseries, and uniformed workers ... are classic *scenes a*

22

*faire*" flowing from the concept of a dinosaur zoo). Moreover, there are obvious differences between these settings. Topeka is not Bunnyburrow and Los Angeles is not Zootopia. And the educational institutions (college v. police academy), workplaces (movie studio v. police department), "male-only rooms" (locker room v. boy scout clubhouse), media venues (talk show v. press conference) and asylums (insane asylum for humans v. remote asylum where "savage" animals are hidden from society) are facially dissimilar.

### G.    The Mood and Pace Are Not Substantially Similar

For the most part, the amended complaint simply repeats the same generic similarities in mood and pace that the Court already rejected—*e.g.*, both works involve "light moments juxtaposed with dark moments" and "sometimes exhibit[] frenetic energy" during comedic and uplifting moments "while other times slowing down for the exposition of disappointment and disillusionment." *Compare* Doc. 1 ¶ 77 *with* FAC ¶¶ 129, 131. As the Court observed, such generic descriptions could encompass "nearly every animated movie Disney has ever made" and are not protectable. Order at 16; *see Mandeville-Anthony*, 2012 WL 4017785, at *4.

Paragraph 130 includes new descriptions, but these blatantly mischaracterize both *Looney* and *Zootopia*. For example, *Zootopia* is not a "psychodrama about madness," FAC ¶ 130—it is an animated picture about a bunny cop and con-artist fox who team up to solve a missing-animals crime and defeat Bellwether's scheme to make predator animals appear "savage." And *Looney* is not a "political fable about utopias." *Id.* Far from it. The animated story-within-a-story is a high school drama about teenage animals looking for popularity and love.

### H.    The Combinations Of Elements Are Not Substantially Similar

In *Metcalf v. Bochco*, the Ninth Circuit concluded that even where a work's individual elements are not protectable, "[t]he particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element." 294 F.3d 1069, 1074 (9th Cir. 2002). In that case, the Court

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

detailed the many "striking" similarities between the works at issue, and ruled that their "cumulative weight" allowed plaintiffs to survive summary judgment.  *Id.* Relying on *Metcalf*, Plaintiff alleges that Defendants copied the "selection, arrangement, and combination of elements" in *Looney.*  FAC ¶¶ 136-38.

The narrow test articulated in *Metcalf* has not remotely been satisfied.  As the Ninth Circuit has made clear, "it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection."  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  Rather, the similarities must be "voluminous, nearly identical, and occur[] in the same pattern."  *Gable v. NBC*, 727 F. Supp. 2d 815, 843-44 (C.D. Cal. 2010), *aff'd*, 438 F. App'x 587 (9th Cir. 2011).[10]

Here, the alleged similarities are not "voluminous" or "identical" and do not "occur[] in the same pattern."  *Id.*  To the contrary, as described above, *Looney* and *Zootopia* are different in every key respect.  *Supra* at 7-23; *see also* Order at 11 (*Looney* is "different in key respects from the plot of *Zootopia*").  Courts have consistently declined to apply *Metcalf* where, as here, the alleged similarities are "random and have no concrete pattern or sequence in common."  *Bethea v. Burnett*, 2005 WL 1720631, at *14 (C.D. Cal. June 28, 2005); *see also Shame on You*, 120 F. Supp. 3d at 1170-71 (no "common pattern of unprotected elements").

## III.   PLAINTIFF'S DERIVATIVE STATE-LAW CLAIMS ALSO FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.

The Court should also dismiss Plaintiff's state-law claims, each of which fails as a matter of law.  To allege a breach of implied-in-fact contract claim, Plaintiff must demonstrate "substantial similarity" between the works at issue.  *Benay*, 607 F.3d at 631.  The Ninth Circuit has "specifically rejected the contention that liability could be imposed on defendants on the basis of less than substantial

---

[10] Notably, courts have consistently declined to expand *Metcalf* beyond the unique facts of that case.  *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1138 (C.D. Cal. 2007) (collecting cases).

DEFENDANTS' MOT. TO DISMISS
2:17-CV-02185-MWF-JC

similarities." *Id.*  The same is true for Plaintiff's breach of confidence claim, which requires a showing of Defendants' "disclosure or use" of *Looney*, *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903 (9th Cir. 1987); *see* 5 Nimmer § 19D.08, and unfair competition claim, which is derivative of Plaintiff's other claims.[11]  FAC ¶ 170.  As described above, the concrete elements in *Looney* bear no similarity to those in *Zootopia*, let alone "substantial similarity."  Because these works are not similar, and Defendants do not "use" any of Plaintiff's ideas or materials, Plaintiff cannot sustain its state-law claims.  The Court should dismiss those claims as well.

Absent dismissal, Plaintiff will re-file these claims, which would require a state court to undertake the same analysis as this Court and force Defendants to incur additional fees (without the benefit of the federal fee-shifting statute, 17 U.S.C. § 505).  Federal courts should exercise supplemental jurisdiction to dismiss state-law claims where, as here, it would serve "economy, convenience, fairness, and comity."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

## IV.   CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety with prejudice.


Dated:  August 28, 2017                    O'MELVENY & MYERS LLP

                                           By:   /s/ Daniel M. Petrocelli
                                                 Daniel M. Petrocelli

                                           Attorneys for Defendants
                                           The Walt Disney Company, et al.

---

[11] To the extent that Plaintiff's unfair competition claim is derivative of its federal copyright infringement claim, it is also preempted.  17 U.S.C. § 301.